Thomas *v.* Bennett.

[ONONDAGA GENERAL TERM, April 7, 1868. *Foster, Morgan* and *Mullin,* Justices.]

————————•◦•————————

| 56 | 197 |
| 138a | 342 |

| 56b 197 |
| f50ad104 |

EDGAR THOMAS, general guardian of Joel D. Thomas and George Thomas, *vs.* JOHN C. BENNETT.

A general guardian appointed by the surrogate can maintain an action in his own name, as such guardian, to recover a debt due to his wards.

Thus he may bring an action to compel the defendant to pay money due from him, which he received in pursuance of an express contract made between him and the guardian for the benefit of the ward, and which he was to pay over to the guardian.

APPEAL from a judgment of the county court of Onondaga county, affirming a judgment in favor of the plaintiff, rendered in a justice's court.

*William J. Hough,* for the appellant.

*William J. Wallace,* for the respondent.

*By the Court,* FOSTER, J. The plaintiff, Edgar Thomas, was appointed general guardian of the above named Joel D. and George Thomas, and they were entitled to pension money which was to be paid by the government of the United States. The plaintiff, as such guardian, employed the defendant to obtain payment of the

money; the defendant obtained the money, and when the plaintiff demanded it of him claimed that he had forwarded it to him by mail. The plaintiff sued him before a justice, as guardian of the above named infants, and the justice allowed him to amend his complaint by inserting the word " general" before the word " guardian," in the title of the suit. The defendant moved to dismiss the complaint, on the ground that a general guardian has no capacity to sue, and that a guardian *ad litem* must be appointed before the issuing of the process. The justice denied the motion. The action was tried before a jury, and a verdict was rendered for the plaintiff, for the amount claimed, with costs. The defendant appealed to the county court, where the judgment of the justice was affirmed. The only question raised here is, whether the general guardian appointed by the surrogate can maintain the action in his own name as such guardian.

A guardian in socage, or a guardian by nature, cannot maintain such an action. The guardian in socage may sue for claims covering the real estate of his ward, but cannot sue to recover his personal property. And a guardian by nature, except so far as the statute has conferred upon him the rights of a guardian in socage, (1 *R. S.* 718, §§ 5, 6, 7,) extends only to the person, and does not extend to the personal estate of the ward. (1 *John. Ch.* 3. 2 *Kent's Com.* 5th ed. 219. 3 *Pick.* 213. 7 *Wend.* 354. 1 *P. Wms.* 285. 2 *Atk.* 80. 3 *Brown's Ch.* 186. 5 *Term Rep.* 690.)

The powers of a testamentary guardian are much larger. He takes the custody and tuition of his ward, and may maintain an action for taking or detaining him, though the damages which he recovers are for the benefit of the ward. " He shall also take the custody and managment of the personal estate of such minor, and the profits of his real estate, during the time for which such disposition shall have been made, and may bring such actions in re-

Thomas *v.* Bennett.

lation thereto as a guardian in socage might, by law."
(1 *R. S.* 150, § 3.)

The Supreme Court may appoint general guardians, and
such guardians are entitled to receive legacies and dis-
tributive shares belonging to their wards, (*Genet* v. *Tall-
madge*, 1 *John. Ch.* 3,) and the powers of such guardians
are at least as extensive as those of a testamentary
guardian.

The surrogate has the same power to allow and appoint
guardians as is possessed by the chancellor, (1 *R. S.* 150,
§ 6,) and when so appointed, the guardian shall have the
same power as a testamentary guardian. (1 *R. S.* 151, § 10.)

Now, for what are testamentary guardians authorized,
by the aforesaid section 3, to bring actions? They are to
take the custody and management of the personal estate,
and the profits of the real estate, and to " bring such
actions in relation thereto." In relation to what? Cer-
tainly not for the rents and profits of the real estate alone,
but also in relation to the personal property; and if it were
not for the residue of the section, " as a guardian in socage
might by law," there would be no question of such right.
But does this last branch of the section at all restrict such
power of bringing suits, to the rents and profits of the real
estate only? What reason can there be why the general
guardian should not have the same right to bring suits for
the personal property of which he has the charge and pos-
session, and of which he can unquestionably dispose by
sale, that he has to sue for the rents and profits of the
real estate?

It is true that the guardian in socage can bring no
suits except in regard to the real estate, and for the rents
and profits of it; but this is so because he has no con-
trol whatever over the other personal estate of his ward;
and therefore, I think, although the language of the section
is somewhat loose, the legislature intended to confer the
same right upon the general guardian to sue in relation to

any of the property under his control, that the guardian in socage possessed in reference to the property of which he had charge. And the sentence would have explicitly declared, I doubt not, what was the intention of the legislature, if it had added, at the end of the sentence, "in regard to the real estate."

It is true that a general guardian cannot bring a suit in his own name to compel the personal representatives of the estate, of which his ward is entitled to a distributive share, to pay over to him such share. But this is not because of his inability to sue. It is because the personal representatives cannot be reached in that way. They must be called to account to ascertain the rights of the ward, and on that accounting all persons interested must be made parties; and until that is done, and the rights of the ward are ascertained, the whole fund legally belongs to the estate which the executors or administrators represent, and there is nothing that the guardian can claim to control. But where the property is vested in the ward, the control of the personal property, and the right of its possession, belongs to the guardian alone. The ward cannot dispose of it, and it must be conceded that he alone can sue for it.

The section under consideration has received a judicial construction. In *White* v. *Parker*, (8 *Barb.* 52,) the court, Mullett, J., in reference to the section under discussion, says: "The pecuniary subjects of this trust are the personal property and credits of his ward, and the rents and profits of his ward's real estate. It is the duty of a guardian to use all reasonable means to get possession and control of his ward's personal property, and the rents and profits of his real estate, and to collect the debts or moneys due to his ward, and for that purpose he has power to bring the necessary actions. And substantially the same is held in *Genet* v. *Tallmadge*, (1 *John. Ch.* 5,) where the chancellor says: "The statute contemplates a recovery at

Thomas *v.* Bennett.

law, by the guardian, of legacies and distributive shares, on giving approved security to account, &c. A guardian is, by the general nature of his trust, entitled to the possession and care of the personal, and of the rents and profits of the real estate of the infant."

It would certainly be a very useless ceremony, where the personal property was legally owned by the ward, and a suit became necessary to recover for it, there being a general guardian, that the action should be brought in the name of the infant, under the appointment of a guardian *ad litem,* and who, if, when he had received the money, should refuse to pay it over to the general guardian, would have to be sued therefor in the same way.

The guardian may sell the personal property of his ward. (*Field* v. *Schieffelin,* 7 *John. Ch.* 150.) He may settle between the ward and executors or administrators respecting a legacy or distributive share due to the ward. (*Dakin* v. *Demming,* 6 *Paige,* 95.) And he has power to submit to arbitration the rights of his ward. (*Weed* v. *Ellis,* 3 *Caines,* 253.)

The powers and duties of guardians, in respect to the estates of their wards, is analogous to those of executors and administrators over the estate of their testator or intestates, and like those of committees of the estates of idiots, lunatics and habitual drunkards. In all these cases they can sue in their own names, as well since the Code of Procedure as before; and in *Person* v. *Warren,* (14 *Barb.* 489,) it was held that a committee of a lunatic could commence an action in his own name to set aside a judgment recovered against the lunatic, upon a bond and warrant of attorney; and that, within the meaning of section 113 of the Code, he was the trustee of an express trust. This was a special term case, but the question was fully discussed by Taggart, J., at pages 492, 3, 4. And in *Davis* v. *Carpenter,* (12 *How. Pr.* 287,) also at special term, Balcom, J., held that the committee of the person and estate

---

of a habitual drunkard may bring actions on promissory notes which he received as such committee, in his own name, without describing himself as committee.

Certainly, if the committee of a lunatic or habitual drunkard is a trustee of an express trust, within the meaning of section 113 of the Code—and it appears to me that they must be—the general guardian of an infant is equally so. And besides, the action in this case is brought to compel the defendant to pay money due from him, which he received in pursuance of an express contract made between him and the guardian, for the benefit of the ward, and which he was to pay over to the guardian.

The judgment of the county court should be affirmed.

*Judgment affirmed.*

