CONRAD M. ZULICK *against* GEORGE W. MARKHAM AND
OTHERS.

(Decided June 28th, 1875.)

The plaintiff delivered to his broker a certificate of stock, with a blank power
of attorney to transfer it indorsed thereon, and directed his broker to procure
a loan of money for him thereon. His broker, instead of so doing, through the
aid and assistance of the defendants (who were also brokers, and who acted in
good faith and without knowledge of who was the owner of the stock, or what
the plaintiff's instructions to his broker had been), sold it to a purchaser in good
faith. *Held*, that the defendants were not liable for a conversion of the stock,
and stood being equally innocent in the same position as the purchaser from
them in good faith.

APPEAL by the defendants Markham and Townsend, from
a judgment of this court for $8,499 71, entered on the verdict
of a jury after a trial before Judge ROBINSON.

The action was brought for the conversion of eighty shares
of the stock of the National Trust Company, of the par value
of $8,000. The facts are stated in the opinion.

*Fullerton, Knox & Crosby*, for appellant Townsend.

*Beebe, Wilcox & Hobbs*, for appellant Markham.

*W. I. Butler*, for respondent.

CHARLES P. DALY, Chief Justice.—The plaintiff delivered
a certificate of eighty shares of stock, with a power of attorney
in which the name of the transferee was left blank, together
with the plaintiff's promissory note for $4,800, to a broker
named Cook to borrow money for the plaintiff's use, the cer-
tificate of stock to be pledged as security for the payment of
the note. Cook went to a broker named Christie to procure a
loan upon the stock, who went to another broker named Mark-
ham, and Markham applied to another broker named Townsend,
but neither Markham nor Townsend were willing to loan
any money upon the stock. Cook then authorized Christie
to sell it at 58½ per cent., and Christie offered it to Mark-

ham, who agreed to take it at' that price. Markham with-out paying anything for it, and the certificate still remain-ing in the hands of Cook, was engaged for nearly two months in trying to find a purchaser for the stock, during which he offered it to the broker Townsend for $62\frac{1}{2}$ per cent., and Townsend having on his part found a purchaser for it in a person named Burdell, agreed to take it from Markham at $62\frac{1}{2}$ per cent., and sold it to Burdell at 70 per cent., who paid the amount for it. Townsend then deducted from the amount received the difference between $62\frac{1}{2}$ and 70 per cent. as his profit in the transaction, and Markham the difference between $58\frac{1}{4}$ and $62\frac{1}{2}$ per cent. for his profit, out of which it would seem he paid Christie $100 for his profit, and Cook upon receiving the residue, paid $70 50 to Christie, and after deducting his own commission as a broker, he paid what was left, $4,539, to a person by the plaintiff's direction, the plaintiff supposing that was the amount which Cook had obtained upon the note. Neither Christie, Markham, Townsend or Burdell knew that the plaintiff was the owner of the stock, nor did either of them see or know anything of the note which the plaintiff had given to Cook, nor did either of them know the fact that the stock had been placed in the hands of Cook solely for the purpose of borrowing money upon it. Cook told Christie that somebody wanted a loan upon the stock, and that there would have to be a note, and after the sale of the stock he heard that the plaintiff was the owner of it.

The plaintiff, whose note was outstanding, and who had received, as he supposed, the $4,539 as a loan upon the note and the certificate of stock pledged for the payment of the note, having afterwards learned that the stock instead of being pledged as security for the payment of the note, had been sold to Burdell, an innocent purchaser for value, through the joint instrumentality of Cook, Christie, Markham and Townsend, brought the present action against these four brokers, for a conversion of the stock. The complaint was dismissed for a defect in the pleadings as to Cook the fraudulent broker, through whose instrumentality the stock was diverted from the use for which it was delivered to him; but judgment for the

full value of the stock, was recovered against Christie, Markham and Townsend, as parties assisting and co-operating with Cook in the conversion of the stock. The appeal is brought only by Markham and Townsend, and the question is whether they are liable with Cook for a conversion of the stock. In my opinion they are not.

It is not disputed that no action could be maintained against Burdell, he being an innocent purchaser for value ; nor does the fact appear to be disputed that Christie, Markham and Townsend were innocent parties, who did what they did in the transfer and sale of the stock, without any knowledge of the circumstances under which it was placed in the hands of Cook, and in the belief, accompanied as it was by a power of attorney in blank, that he, Cook, had full power and authority to dispose of it ; but their liability to an action for the conversion is predicated upon the fact that neither of them were purchasers for value, having paid nothing for the stock, and that having exercised a control or dominion over it in the successive transfers of it from one to the other, until the final purchase of it by Burdell for value, that they are answerable as wrongdoers, through whose joint and successive instrumentality the stock passed into the hands of an innocent purchaser for value, and was thus lost to the plaintiff.

It was said by Lord Holt, in *Baldwin* v. *Cole* (6 Mod. 212), that conversion was " an assuming upon one's self the property and right of disposing of the goods of another," and by Lord Ellenborough, in *McCombie* v. *Davies* (6 East, 538), that " a man is guilty of a conversion, who takes any property by assignment from another who has no authority to dispose of it ; for what is that but assisting that other in carrying his wrongful act into effect." This is undoubtedly the law, although somewhat broadly stated, but it is to be understood with a qualification, since extensively acted upon, which is comprehensively and succinctly stated by Judge Rapallo, in *McNeil* v. *The Tenth National Bank* (46 N. Y. 329), as follows : " Where the true owner holds out another, or allows him to *appear* as the owner of, or as having full power of disposition over the property, and innocent third parties are thus led into dealing

with such apparent owner, they will be protected. Their rights in such cases, do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or power, which through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance;" and that, in my judgment, as respects these brokers Christie, Markham and Townsend, is the present case.

The plaintiff, through mistaken confidence in the fraudulent broker Cook, placed in his hands the certificate of stock with a power of attorney in blank indorsed upon the certificate, thereby enabling him to appear as if he had the right to assign and dispose of the stock by simply filling in the blank in the power with the assignee's or vendee's name; in other words, giving him the indicia of title, or the usual means by which transfers of stock are made in such cases; and by so doing, putting it in his power to deal with innocent parties who treated with him in the ordinary course of business, upon the assumption that he was the person who had the right to dispose of it.

It was held by the Court of Appeals in *McNeil* v. *The Tenth National Bank* (*supra*), after a very elaborate review of the authorities by Judge Rapallo, that the owner, by a delivery to the broker of a certificate of shares of stock, with an assignment perfect in all respects except that the date and the name of the transferee is left blank, confers upon the broker such an apparent title to, or power of disposition over the shares in question, as will estop him from asserting his own title, as against parties who took *bona fide* though the broker, and that the delivery of the certificate with such an assignment or power passes the entire legal title to the stock. "The holder of such a certificate and power," says Judge Rapallo, "possesses all the external *indicia* of title and an apparently unlimited power of disposition over it." It is urged, however, that this protection extends only to an innocent purchaser, who has paid value for the stock, and cannot be invoked by intermediate innocent parties through whose instrumentality or

negotiations the stock has become the property of an innocent. purchaser for value. The cases in which this rule has been applied have usually, and perhaps exclusively, been cases of an innocent purchaser for value, but it does not follow that it cannot be applied to persons equally innocent and equally entitled to its protection, such as brokers who, deceived by the same *indicia* of apparent ownership, are led to negotiate and effect the sale of stock, under the belief that the person for whom they are acting has the right to dispose of it. If the innocent purchaser for value is protected in his purchase, I utterly fail to see why the innocent broker who sold it to him is to be regarded as a *tort-feasor*, and made answerable to the owner for the full value of the property which is lost to the owner by an act on his part which has misled the broker quite as much as the innocent purchaser.

It is unnecessary to review the authorities in England and in this country by which the rule under consideration was settled, to ascertain the reasons upon which it is founded ; for they are set forth in exact conformity with the authorities by Grover, J., in *Moore* v. *The Metropolitan Bank* (55 N. Y. 46, 47). " One reason," he says, " why an owner of corporate shares, or of goods and chattels, who has conferred upon another the apparent ownership without transferring to him a valid title, was held precluded from asserting his title against a *bona fide* purchaser from such apparent owner, is that such purchase was made upon *the faith of the title which he had apparently given*, and that it would be contrary to justice and good conscience to permit him to assert his real title against an innocent purchaser from one clothed by him with all the *indicia* of ownership and power of disposition. Another reason was that were the rule otherwise, it would afford opportunities for the perpetration of frauds upon the purchasers from such apparent owners. Where one known to be the owner of the shares or chattels, delivers to another the scrip, or the possession of the chattels, together with an absolute written transfer of all his title thereto, he thereby enables him to hold himself out as owner, and as such, to obtain credit upon, and *make sales of the property ;* and if, after he had so done, the

owner was permitted to come in and assert his title against
those *dealing upon* the faith of these appearances, the dishon-
est might combine and practice the grossest frauds. Another
reason is, that it presents a proper case for the application of the
legal maxim, that where one of two innocent parties must sus-
tain a loss from the fraud of a third, such loss should fall upon
the one, if either, whose act has enabled such fraud to be com-
mitted."

These reasons are as applicable to an innocent broker, in
whose hands the stock is placed for sale, with a power of attor-
ney indorsed upon it with a blank for the transferee's name to
be filled in, as they are to the purchaser for value to whom the
broker sells it, and there is nothing in the law that warrants the
conclusion that the broker who thus receives and sells it in
good faith, does so at the peril of an action of trover for a
conversion, if it should turn out that the broker who received
the certificate with the power in blank, received it only to bor-
row money upon it. If the owner cannot recover against the
purchaser in good faith, because he has clothed the person to
whom he delivered the stock with the apparent evidence of
ownership, why should he be allowed to recover against the
broker who has equally in good faith negotiated the sale, and
who is equally misled by the apparent authority which the
owner has conferred?

Trover or trespass would lie for wrongfully taking and dis-
posing of property without the owner's permission, consent or
authority. But that is not this case. The plaintiff gave an ap-
parent authority to sell and dispose of the stock, by delivering
the certificate with a power of attorney in blank indorsed upon
it to Cook, and when Markham and Townsend were applied to,
they had the right to presume, finding that there was a power of
attorney indorsed upon the certificate with a blank for the
transferee's name to be filled in, that the broker who brought it
to them to have it sold had the right to dispose of it, clothed
as he was by the plaintiff with all the apparent authority of
ownership.

The broker, Townsend, before he disposed of it to a *bona
fide* purchaser, and to be secure against the consequences of

paying over the proceeds of the sale to Cook, as he had himself agreed to take it at $62\frac{1}{2}$ per cent., acted with due business caution. When he saw the certificate for the eighty shares, he remarked to the other broker, Markham, that he wished to ascertain if the stock was all right, as there were a great many frauds in the market; and he accordingly went to the office of the company and saw a Mr. Mangam, who looked at the certificate, and did not seem to recognize the signature. Mangam then called in the transfer clerk, and he did not seem to recognize it; upon which, Mangam and the clerk had a consultation together in the rear of the office, after which the clerk came forward and said it was all right.

This was all that a prudent business man could be expected to do, when a certificate of stock, with a power of attorney for the transfer of it, was placed in his hands either to purchase or to sell in his capacity as a broker; and to hold, under such circumstances, that he was guilty of a conversion for selling it, and must pay to the owner the full value of it, is to render the business of a broker a perilous one indeed. It is only necessary to add that both Markham and Townsend swear explicitly that they acted throughout in good faith, and in my opinion the judgment should be reversed as to them, and a new trial ordered.

LOEW, J.—I agree with the learned Chief Justice, that if a *bona fide* purchaser of stock, with a power of attorney in blank indorsed thereon is protected, it is difficult to perceive why an innocent broker, or other intermediate party through whose agency or instrumentality the sale has been effected, should not be equally protected. Whether or not the defendants Markham and Townsend acted in good faith in this transaction may, on the evidence, be considered doubtful. It seems to me, therefore, that the question of good faith should have been submitted to the jury. If they reached the conclusion that either one of the defendants acted in perfect good faith, and without knowledge of the circumstances under which, or the purposes for which, the stock came into the hands of Cook, I incline to the opinion that he would not be liable in this action. I have carefully examined the evidence in the case, and think

that the testimony given on the part of the defendants, would have warranted such a finding by the jury. The learned judge who presided at the the trial, however, expressly refused to submit to them the question whether either of the defendants acted in good faith and without knowledge of the object for which the stock was placed in Cook's hands. In this I think he erred. I therefore concur with the Chief Justice in the opinion that the judgment should be reversed, and a new trial ordered, with costs to abide the event.

JOSEPH F. DALY, J., dissented.

Judgment reversed, and a new trial ordered.