EDWARD C. PERKINS, as General Guardian of the Estate of EMILY L. MIDDLETON, an Infant, Plaintiff, *v.* JOHN STIMMEL and JAMES McCREARY, Defendants.

*Action against sureties upon a general guardian's bond — as to whether it should be brought in the name of the infant or of the guardian — when an action will lie against the sureties on the bond before an accounting has been had by the guardian.*

This action was brought by the plaintiff, as general guardian of the estate of an infant, against the sureties, upon a bond given by a former guardian of the same infant, upon his appointment by the Surrogate's Court. Upon the trial the defendants objected to the maintenance of the action by the plaintiff, upon the ground that it should have been brought in the name of the infant, by the plaintiff as her guardian.

*Held*, that in view of the conflict of authority, as to the right of the plaintiff to maintain the action as general guardian of the infant, the court would hold that the suit was properly brought, but would allow the plaintiff, if he so elected, to change the title so as to make the action one by the infant, by the plaintiff as his general guardian.

The guardian, who was the principal in the bond, died on October 23, 1884, intestate, the public administrator of the city of New York being appointed to administer upon his estate. He found no assets, except six dollars and forty cents and an old desk containing a quantity of stationery and papers, and none of the assets belonging to the infant. On January 3, 1884, the guardian had filed his sworn account with the surrogate, showing $12,137.40 to be then in his hands; and it was proved that, in September, 1884, he converted twenty-five shares of the Mercantile Trust Company stock, valued in his inventory at $3,500, by transferring it from himself, as guardian, to himself as an individual, and thereafter selling it.

*Held*, that an objection that the action would not lie against the defendants, as sureties, without an accounting before the surrogate was properly overruled.

That, although an accounting is one of the conditions of the bond, for a breach of which the sureties are liable, yet it is not the only condition, the primary condition being that the guardian " will, in all things, faithfully discharge the trust reposed in him," the breach of which condition, in this case, justified the bringing of the action.

That, while the courts will require an accounting by the guardian, when that will be necessary or availing to establish the extent of the sureties' liabilities, and when it is practicable to have one, yet, where it is a proceeding of no use or advantage to the sureties, and can only result in subjecting them to the burden of a double litigation, it will not be required.

Motion for a new trial on exceptions directed to be heard at the General Term in the first instance, after a verdict had been directed in favor of the plaintiff.

*H. H. Davis* and *E. P. Wilder*, for the defendants.

*John C. Gray*, for the plaintiff.

DAVIS, P. J.:

This case bristles with objections and exceptions but they are mostly of a technical and unimportant character and need only the most cursory notice. The action is upon a bond given by a guardian upon his appointment by the Surrogate's Court, and many of the exceptions relate to its form and to the manner in which it was drawn, and its penalty inserted and its date omitted, etc., on and before the filing of it in the Surrogate's Court. The omission of the date is of no importance. The time of delivery determines the date, and the delivery and filing of such a bond in the Surrogate's Court controls the question of date where it is not inserted, and also where it is, when the question of date becomes important. A clerk of the Surrogate's Court filled out the bond, and, in doing so, inserted the penalty at double the valuation of the infant's property as stated in the petition. It is insisted for this reason, that the surrogate did not "fix the amount of the bond," as required by the statute. This objection is a *non sequitur*. It does not follow because the scrivener filled in the penalty in the blank, that the surrogate did not fix it. The bond was afterwards duly filed, and upon it and the other proceedings in the case, the surrogate in due form ordered and issued the letters of guardianship, in which he recites that "such guardian has duly executed and delivered a bond pursuant to law for the faithful discharge of his duty, and we being satisfied of the sufficiency of such bond," etc., do constitute and appoint him such guardian. This sufficiently answers all objections to the bond, so far as they relate to its execution, filing and penalty. Nearly or quite all the other objections touching the bond itself, and the proceedings preliminary to the letters, may be answered in the same way.

There are two questions raised by the exceptions more serious in their nature. The first is whether the suit upon the bond should have been brought in the name of the infant by the plaintiff as her guardian instead of by the plaintiff as guardian of the estate of the infant. There is no doubt, under the authorities, that the action might properly have been brought in the name of the infant by her

guardian. (Code, §§ 449, 468, 469, 470; *Segelken* v. *Meyer*, 94 N. Y., 47; *Buerman* v. *N. Y. Produce Exchange*, Daily Reg., 1886, p. 785; *Bradley* v. *Amsdon*, 10 Paige, 235.)

Probably that would have been the better practice. But there are authorities which allow the suit in its present form on such a bond. (*Thomas* v. *Bennett*, 56 Barb., 197; *Hauenstein* v. *Kull*, 59 How. Pr., 24; *Coakley* v. *Mahar*, 36 Hun, 157.) The question has no substantial merit. The cause of action is precisely the same in either case, and the object and result are the same if a recovery be had. The guardian in fact recovers as such in either action, and takes the property as guardian, and is bound to account to the infant for the judgment and its proceeds. The question could have been raised at the beginning of the suit by demurrer as well as at the end of a trial. When raised at the trial it ought not to be fatal. Every element is present by which the formal change can be made by amendment if necessary, and the interests of justice demand it. Nobody has been misled to his prejudice, and no good reason exists why the amendment should not be ordered even now if the plaintiff elects to make it. In such a case as this, although the bond is in form to the infant, it becomes on default an asset of her estate, which her guardian is entitled to possess and control, sue for and recover, and is bound eventually to account for. On recovery as has already been said he takes the proceeds as his in his relation as guardian, and is entitled to keep and defend possession, and to invest and control and finally account for the same. There is no sound reason why he may not sue in his capacity of guardian the question being precisely the same and the result the same as when he sues in the infant's name by himself as guardian. In the conflict of authority, we shall hold the suit properly brought as it is, but with leave however if plaintiff elect to do so, to change the title by a transposition of names, which seems to be all that is necessary.

The other, and still more difficult question is, whether an action will lie on the bond against these defendants, who were sureties, without an accounting before the surrogate. The guardian, who was the principal in the bond, is dead. He died intestate, and the public administrator of the city of New York was appointed to administer upon his estate. He was able to find nothing but six dollars and forty-one cents and an old desk containing a quantity of

stationery and papers. He found none of the assets belonging to the infant. To have called the public administrator to an account would have been an idle expense, and there was no one else to account. The guardian died about the 23d of October, 1884, as the pleadings admit. He filed his sworn account with the surrogate January 3, 1884, showing $12,137.40 then in his hands. It was proved that, in September, 1884, he converted twenty-five shares of the Mercantile Trust Company, valued in his inventory at $3,500, by transferring them from himself, as guardian, to himself as an individual, and selling them afterwards. To require an accounting under such circumstances would be a futile and idle ceremony, a vain thing, and vain things are condemned by legal maxims. Yet, if the language of the bond demands it, the law must respect the demand. An accounting is one of the conditions of the bond, for a breach of which the sureties are liable; but it is not the only condition; the primary condition is that the guardian "*will in all things faithfully discharge the trust reposed in him.*" This condition was broken in this case, and so broken that the performance of the other conditions are rendered nugatory by the misconduct of the guardian. Where such a state of things clearly appears, to require the infant to demand and compel a legal accounting before the surrogate or some other court, which, it plainly appears, will result in no benefit to her or to the sureties, seems not merely unnecessary but unreasonable and unjust. The conditions of the bond are divisible, and unless all must be broken before the sureties can be sued, then it is enough that the primary one is broken in such form as to show that the others are of no value. In *Girvin* v. *Hickman* (21 Hun, 316), in a somewhat similar case, it was held that an accounting before suit brought on the bond was not necessary, and the court, after reviewing the cases, said: "It is obvious, from the cases, that an accounting by the guardian is not always a prerequisite to an action against the sureties upon the bond, and there are many special circumstances in which it may be dispensed with. * * * But, if the case is such that the extent of the guardian's liability appears without an accounting, why should an accounting be required before suit against the sureties?"

And Chancellor WALWORTH, in *Cuddebach* v. *Kent* (5 Paige, 98),

said : " The prosecution of a suit against him alone, in the first instance, would, therefore, be worse than useless as respects the sureties, and would subject them to the expense of a double litigation."

The upshot of the authorities seems to be that the court will require an accounting by the guardian where that will be necessary or availing to establish the extent of the sureties liability, and is practicable to be had; but where it is a proceeding of no use or advantage to the sureties, and can only result in subjecting them to the burden of a double litigation, it will not be required. This is equivalent to holding that the conditions of the bond are independent and divisible, and may be so treated in the class of cases referred to.

We think, therefore, as there seems to be no substantial reason why the amount of the verdict is not correct, judgment should be ordered for the plaintiff on the verdict.

BRADY and DANIELS, JJ., concurred.

Judgment ordered for plaintiff on verdict.