ELIZABETH BROWNE CASEY, an Infant, by JULIA A. BROWNE, Her Guardian ad Litem, Plaintiff, *v.* PHILIP F. KASTEL and Others, Defendants.

Supreme Court, New York County, June, 1922.*

Infants — no power to appoint agent — stock certificate indorsed in blank and delivered to broker — infant owner may maintain conversion against broker and all other brokers concerned in effecting sale — failure of initial broker to pay over proceeds — other brokers not released from liability because of apparent authority of first man.

Under the law of this state an infant's appointment of an agent is absolutely void.

---

* Received too late for insertion in proper place.— [REPR.

Where the infant owner of a certificate of corporate stock delivers it indorsed in blank but subject to her order to a broker who without further direction sells it she may hold in conversion not only the broker to whom she intrusted the certificate but other brokers who were concerned in effecting the sale and also the corporation which canceled the certificate, transferred the stock on its books and issued a new certificate to the purchaser.

The broker to whom the certificate had been intrusted had no actual authority to dispose of it, and the transferees thereof, even though they were without knowledge of the fact of infancy and innocent of the unlawful act of him to whom the certificate had been intrusted, having taken part in the disposal of the certificate, thus depriving the owner of her stock, were not released from liability because they acted under the apparent authority of the broker who sold it.

The cancellation of the certificate by the corporation without right or authority was in itself an act of conversion.

In an action by the infant owner through her guardian *ad litem* to recover damages for the conversion of the certificate, it appeared that a few days after its delivery to the defendant to whom it had been intrusted he informed the plaintiff that he had sold her stock for $11,000 and delivered to her his personal note for $12,500 payable in thirty days and $1,500 in cash for the use of her money for that time. Thereafter and prior to the maturity of the note he made two additional payments making in all a total payment of $4,500. *Held,* that there being no evidence of intentional fraud on the part of plaintiff she was not estopped by her indorsement in blank of the certificate and was entitled to recover as damages the difference between the net amount realized on the sale of the stock and the amount paid to her.

ACTION to recover damages for the alleged conversion of a certificate of stock. On the trial a jury was waived and the issues submitted to the court for determination.

*Kendall & Herzog (Henry L. Sherman,* of counsel), for plaintiff.

*Pendleton, Anderson, Iselin & Riggs (Ellery O. Anderson,* of counsel), for defendants Johnson and Wood.

*William W. Corlett (William Averell Brown,* of counsel), for defendant United States Steel Corporation.

O'MALLEY, J. This is a suit in conversion by an infant through her guardian *ad litem.* The property involved is a certificate of stock of the defendant United States Steel Corporation. The evidence justifies a finding that the plaintiff intrusted the certificate to the defendant Kastel, subject to her order, and that without further direction Kastel sold it. Later, while still a minor, the plaintiff in form ratified the sale. She now seeks to hold in conversion, not only the defendant to whom she intrusted the certificate, but other brokers who were concerned in effecting the sale, and also the defendant corporation which canceled the certificate, transferred the stock upon its books, and issued a new certificate to the purchaser thereof. The ultimate purchaser is not sued.

Before bringing suit the plaintiff made no demand and served no notice of disaffirmance on any of the defendants.

The questions involved are novel and of obvious importance. On the one hand is involved the right of the infant to the protection of the court in her property rights; on the other, the rights of innocent third parties who received and dealt with the infant's property without actual knowledge of the fact of infancy. The material facts follow.

For some time prior to March, 1918, the plaintiff was the owner of 100 shares of the preferred stock of the defendant corporation. The certificate stood on the books of the company in her maiden name, Bettie Browne, and she had regularly received the dividends thereon. In January, 1918, she married and was then nineteen years of age. Subsequently she met the defendant Philip F. Kastel, of the firm of Kastel & Co., who, learning that the plaintiff was the owner of the certificate, endeavored to secure possession of it. The plaintiff testified that he requested her to loan it to him, or permit him to take it in order that he could borrow on it, or use it to make money for her, or sell it for her. On March 14, 1918, she finally delivered it to him indorsed in blank. At that time she told him that she had not made up her mind to sell it, that he should keep it and that she would think it over and let him know. She then left Kastel's office.

It appears that on that very day the defendant Kastel ordered the sale of the certificate through the firm of E. E. Reid & Co. This concern, not being a member of the Stock Exchange, placed the order for its sale with the firm of Johnson & Wood, consisting of the defendants Aymar Johnson, Chalmers Wood, Jr., John Fletcher Shera and Victor S. Byron. Johnson & Wood thereupon sold it to the firm of DeCoppet & Doremus, and on the following day Johnson & Wood received delivery of the certificate from E. E. Reid & Co. On the same day it was delivered by Johnson & Wood to DeCoppet & Doremus, who in turn delivered it to the defendant corporation; and the latter, also on that day, canceled the certificate and issued a new certificate to three individuals designated by DeCoppet & Doremus. It appears that no inquiry was made by any of the defendants in regard to the genuineness of the plaintiff's signature. Johnson & Wood relied upon E. E. Reid & Co.'s guaranty of the signature, and both DeCoppet & Doremus and the defendant corporation relied upon the guaranty of Johnson & Wood. It appears that a rule of the Stock Exchange requires that to constitute a good delivery of the certificate of a married woman, the indorsement of her husband is also required.

It further appears that a few days subsequent to March four-

teenth the defendant Kastel informed the plaintiff that he had sold her stock, and requested her to come and see him. When she called he told her that he had realized $11,000 on the sale. He further told her that if she did not need the proceeds for immediate use he would give her $1,500 for the use of her money for thirty days, and would give her his note for the sum of $12,500 payable at the end of that time. Kastel thereupon delivered his personal note to her and gave her $1,500 in cash. Thereafter, and prior to the maturity of the note, Kastel made two additional payments, one of $2,100, and another of $900, making in all a total payment of $4,500. The plaintiff endeavored to secure additional payments but was unsuccessful, although she did receive on one occasion Kastel's worthless check for $50. This check was given in July, 1918, and the plaintiff about this time was told by the defendant Kastel that he was bankrupt, and that the $50 check was the best he could do for her.

This action was begun by the plaintiff by her guardian *ad litem* against these defendants on July 16, 1919. Conversion is alleged as of March 14, 1918. While the defendants Kastel and Andrews appeared and served an answer, they defaulted on the trial. E. E. Reid & Co. and DeCoppet & Doremus were not made parties for the reason, as claimed by the plaintiff, that she had no knowledge of their participation in the sale of her property when action was brought. The original complaint alleged that the plaintiff had elected to disaffirm and renounce her agreement with the defendant Kastel & Co., and further alleged that she had delivered the stock to Kastel & Co. " to be sold for her account at the market price thereof, the proceeds thereof to be delivered to her or invested in other securities for her account."

Upon the trial, after the plaintiff had testified and given her version of her dealings with the defendant Philip F. Kastel, and as above indicated, the complaint was amended to conform to the proof.

Plaintiff upon the trial tendered to the defendants the apparently worthless note of Kastel and in addition credited them with the sum of $4,500 received by her from Kastel. She seeks here to recover the difference between the net amount realized on the sale of the stock, and the amount paid to her by Kastel, or the sum of $6,487.50.

Upon the trial and in their briefs counsel for all parties have proceeded upon the theory that the plaintiff's contract with Kastel & Co., whether it be regarded as an authorized sale of her stock, or the subsequent ratification of an unauthorized sale, was voidable and not void. The defendants contend, therefore, that they were rightfully in possession of the plaintiff's property and vested with

authority to sell it on the date of the alleged conversion. It is urged that the plaintiff's subsequent disaffirmance cannot make such original lawful possession tortious, so as to sustain conversion as of March 14, 1918. On the other hand, plaintiff's counsel contends that disaffirmance by the infant of her relations with Kastel restores the parties to their original position, creates a situation as though no contract had been made, and thus makes the original possession of Kastel and all other defendants tortious.

Authorities in support of their respective contentions are cited by counsel. *Drude* v. *Curtis*, 183 Mass. 317, seems to hold that conversion will not lie for any act committed with respect to the infant's property prior to disaffirmance of the contract of sale; and *Smith* v. *Nashville Railway Co.*, 91 Tenn. 221, while not an action in conversion, lends support to the same theory.

On the other hand, there are seemingly well-considered cases which hold that an infant who disaffirms the sale of personal property may follow it into the hands of an innocent purchaser and recover the property in kind or maintain trover if possession is denied. *Downing* v. *Stone*, 47 Mo. App. 144; *Hill* v. *Anderson*, 13 Miss. 216.

It has been frequently held that an infant may assert title as against the rights and equities of all persons, including a *bona fide* purchaser for value (1 Williston Cont. § 233; *Oneida County Savings Bank* v. *Saunders*, 179 App. Div. 282; *Gage* v. *Menczer*, 144 S. W. Rep. 717); that one who deals with the property of an infant does so with constructive notice of his disability and right of disaffirmance (*McClain* v. *Davis*, 77 Ind. 419; *Murray* v. *Thompson*, 136 Tenn. 118); and that infancy is a defense to an action on the negotiable note of an infant by a *bona fide* holder (Williston Cont. § 233; Williston Neg. Inst. Study Course, § 158; Daniels Neg. Inst. [6th ed.] §§ 225, 226, n. 81; *Van Winkle* v. *Ketcham*, 3 Caines, 323; *Darlington* v. *Hamilton Bank of N. Y. City*, 63 Misc. Rep. 289. So, too, it has been held that an infant may disaffirm an indorsement of a negotiable instrument notwithstanding the provisons of section 22 of the Negotiable Instruments Law of Tennessee, in all respects the same as section 41 of the New York act. *Murray* v. *Thompson*, *supra*. Moreover, our legislature seems to have indicated a clear intent in no way to interfere with an infant's common-law right to disaffirm an indorsement of a certificate of stock by the enactment of section 163 of the Personal Property Law. It is there provided that section 162 of the same act, which relates to the manner of transferring title to shares of stock, shall not be construed so as to enlarge the power of an infant to make a valid indorsement, assignment or power of attorney.

If the plaintiff's contract with Kastel were voidable and not void, the question as to whether disaffirmance prior to the commencement of suit was necessary arises. There was no such notice of disaffirmance here. It has been held that in the case of an executed contract, such as an executed deed of real estate, prior disaffirmance is necessary. *O'Donohue* v. *Smith*, 130 App. Div. 214; 22 Cyc. 555, n. 66. There would also be presented the questions of the alleged failure of the plaintiff to disaffirm the note transaction with Kastel, and her possible ratification of this latter agreement after she became of age. But the commencement of this suit, it seems to me, was in effect a disaffirmance of all of the plaintiff's dealings with Kastel; and I regard the evidence as wholly insufficient to show a ratification. While the plaintiff on one or two occasions asked Kastel for additional payments on account of the note, it is not clear that she did so after becoming of age; and in any event I doubt if such conduct on her part would amount to ratification as a matter of law.

I have reached the conclusion, however, that the alleged sale of the stock in the case at bar was not voidable but void. The infant did not sell the stock to Kastel, the only person with whom she had any personal dealings, but attempted to ratify his unauthorized act in selling the stock as her agent or broker. The result would have been the same if she had attempted to authorize him to make the sale. She was wholly incapacitated from appointing an agent. Any transaction consummated through a person whom an infant assumes to appoint as an agent is not voidable but void. *A fortiori*, an infant cannot during minority ratify an act done by one assuming without authority to act as her agent. *Armitage* v. *Widoe*, 36 Mich. 124. It follows that Kastel's transfer of the stock was tortious from the beginning, and, therefore, conversion lies as of the date of his exercise of illegal dominion without demand or notice of disaffirmance. *Pease* v. *Smith*, 61 N. Y. 477; *MacDonnell* v. *Buffalo Loan, Trust & Safe Deposit Co.*, 193 id. 92.

That an infant's appointment of an agent is absolutely void by the law of this state is well established. *Ely* v. *Ehle*, 3 N. Y. 506; *Fonda* v. *Van Horne*, 15 Wend. 631; *Stafford* v. *Roof*, 9 Cow. 626; *Wamsley* v. *Darragh*, 14 Misc. Rep. 566; *Bennett* v. *Davis*, 6 Cow. 393; *Robbins* v. *Mount*, 33 How. Pr. 24; *Kain* v. *Postley*, 2 Edm. Sel. Cas. 132; *Rogers* v. *Cruger*, 7 Johns. 557; 22 Cyc. 514; *McDonald* v. *City of Spring Valley*, 285 Ill. 52; 2 A. L. R. 1359.

In *Ely* v. *Ehle, supra*, the Court of Appeals said: " The rule seems to be, that if an infant give or sell his goods and delivers them with his own hands, the act is voidable only; but if he give or sell goods, and the donee or vendee take them, by force of the

gift or sale, the act is void and the infant may bring trespass,'' citing *Fonda* v. *Van Horne, supra,* which contains an elaborate discussion of the rule.

*Stafford* v. *Roof, supra,* is directly in point. There, an infant during minority disaffirmed the sale of a horse. The defendant was in possession, but in the absence of proof of manual delivery by the infant, possession by the defendant was held to be tortious *ab initio* and conversion was sustained without proof of prior demand. There it was said by Chancellor Jones: '' It is true in general that the deed of an infant is voidable merely, when delivered with his own hand, and is of equal validity, whether it be of lands or chattels. Some of the old writers seem to make a distinction between deeds and other contracts of infants accompanied by manual delivery; but the distinction is now discarded, and the same effect is given to both. They are not void, but voidable, where any act of delivery is done by the infant calculated to carry an estate; and this whether the contract be beneficial to the infant or not. But a manual delivery seems in such case to be essential. None was shown in this case. The fact of possession by the vendee would be evidence of delivery in the case of an adult; but in the case of an infant vendor, there should be strict proof of a personal delivery. An infant cannot make an attorney. The appointment would be void; and there being no proof of actual manual delivery, the contract would seem to be void. The agreement to sell conferred no right upon the vendee to take. The mere agreement of the infant to sell would not protect the vendee against an action of trespass for taking the horse. The taking would be tortious; and in itself a conversion.''

Kastel's possession on March 14, 1918, being tortious, he acted wholly without right or authority in assuming to dispose of the plaintiff's stock certificate. Nor do Kastel's immediate transferee and the defendants who aided in effecting the sale and transfer of the certificate stand in any better position. Plaintiff, being an infant, is not estopped by her indorsement in blank of the certificate. *McNeil* v. *Tenth National Bank,* 46 N. Y. 325; *Zulick* v. *Markham,* 6 Daly, 129. Only intentional fraud on her part would entitle these defendants to assert the principle of estoppel as against her (*Blakeslee* v. *Sincepaugh,* 71 Hun, 412; *Smith* v. *Baker,* 42 id. 504; *Spencer* v. *Carr,* 45 N. Y. 406); and I find no evidence of fraud whatever.

Under the circumstances the possession of all of the defendants on March 14, 1918, was tortious, and the exercise by them of illegal dominion over the plaintiff's property constituted a conversion, and this notwithstanding Kastel's transferees were without

knowledge of the fact of infancy and innocent of Kastel's unlawful act. Having taken part in the disposal of the plaintiff's property, they are not relieved because they acted under the apparent authority of Kastel, because he had no actual authority to dispose of it. *Hollins* v. *Fowler*, L. R. 7 E. & I. App. 757; *Ely* v. *Ehle,* 3 N. Y. 506; *Milligan* v. *Brooklyn Warehouse & Storage Co.,* 34 Misc. Rep. 55, 59; *McCombie* v. *Davies,* 6 East, 538; *Fine Art Society, Ltd.,* v. *Union Bank of London, Ltd.,* L. R. 17 Q. B. Div. 705; *Spackman* v. *Foster,* 11 id. 99; *Gordon* v. *London, City & Midland Bank,* L. R. 1 K. B. (1902) 242; *Capital & Counties Bank* v. *Gordon,* L. R. App. Cas. (1903) 240. And the cancellation of the certificate by the defendant corporation without right or authority was in itself an act of conversion. *Olds* v. *Chicago Open Board of Trade,* 33 Ill. App. 445.

I find no merit in the contention that the only persons who can be held liable in an action of this kind are the broker with whom the plaintiff dealt, and the persons in whose hands her property is found. All of the defendants, and those not parties, who participated in effecting the sale exercised hostile dominion over the property and aided in depriving the plaintiff of her stock. *McCombie* v. *Davies, supra.* Full legal protection to the plaintiff would seem to require that she should have the right to proceed against any and all persons concerned in the series of events that deprived her of her property. This seems to be the view taken in *Hollins* v. *Fowler, supra.* Otherwise she might find herself remediless by reason of the insolvency of the person with whom she dealt, as is the apparent situation in the case at bar, or by reason of her inability to locate the present holder of her property.

In reaching the foregoing conclusions I have not been unmindful of the urgent contention of the defendants that great hardships must be borne by persons who deal innocently with the property of infants. But, as I view the decisions, the same hardships are usually imposed upon any person who unlawfully, though innocently, deals with property of which another has been tortiously deprived. In either case the law seems to disregard such hardships; and, as suggested by Mr. Justice Blackburn in *Hollins* v. *Fowler, supra,* it is within the province of the legislature to alter the law if resulting hardships and inconveniences become too great.

Nor will this rule deprive an infant of the right to dispose of personal property, as urged by defendants' counsel. She may always make manual delivery, in which case her contract is merely voidable. If upon disaffirmance of such sale, her vendee, and those who take through him, may be held in conversion, as claimed by the plaintiff's counsel (*Downing* v. *Stone, supra*), a valid sale may

always be made through a general guardian; and a *bona fide* purchaser is thus protected. *Field* v. *Schieffelin,* 7 Johns. Ch. 150, 153; *Thomas* v. *Bennett,* 56 Barb. 197, 201.

Judgment for the plaintiff in the sum of $6,487.50, with interest from March 14, 1918. Submit findings in accordance herewith.

Judgment accordingly.