HARVEY C. DUNHAM, &c., RESPONDENTS, *v.* TROY UNION RAILROAD COMPANY, APPELLANT.

*Evidence, conflicting—Nonsuit refused—Delivery without Authority of Owner.*

.Where the case presented only questions of fact, in respect to which there was conflicting evidence, the Court properly refused to nonsuit the Plaintiff. The case was properly submitted to the jury.

Where a person, in possession of goods which belong to another, and which, in law, he is bound to deliver on demand, delivers them to a third party, without authority from the owner, he is responsible for a refusal of such holder to deliver them to the owner thereof.

*E. L. Fursman* for Appellant.
*M. I. Townsend* for Respondents.

DAVIES, CH.J.—The complaint in this action alleges that the Defendant became possessed of, and wrongfully detained from the Plaintiffs, 2,146 railroad ties, the property of the Plaintiffs, of the value of $836.94. Wherefore the Plaintiffs demanded that the Defendant be adjudged to deliver the said property to the Plaintiffs, and pay the Plaintiffs damages for the detention thereof, and that said property may be forthwith delivered to the Plaintiffs. The answer contained a general denial, and the cause came on for trial at the Rensselaer Circuit, before Mr. Justice Peckham, of the Supreme Court, and a jury.

Upon the trial it appeared that the Plaintiffs had sold and agreed to deliver to the firm of Decker & Worthly 17,000 railroad ties, and which were to be delivered on or before the 1st day of August, 1853. This agreement bore date the 8th day of March, 1853. It was provided therein that the ties were to be delivered on the line of the Troy Union Railroad, in quantities, as the said Decker & Worthly might require. The ties, when delivered, were to be approved of by the chief-engineer of the Defendant's road, and the monthly estimates of the engineer of the ties delivered, under the agreement, were to be paid for on or before the 12th day of the succeeding month, less ten per cent.

of such estimates, which was to be retained until the whole number of ties was delivered and approved as therein specified, and then said ten per cent. was to be paid within thirty days thereafter to the Plaintiffs.

It also appeared that on the 9th of February, 1853, the said Decker & Worthly had entered into a contract with the Defendant to construct and finish in every respect, in the most substantial and workmanlike manner, and to the satisfaction and acceptance of the chief-engineer of said company, the grading, masonry, superstructure, bridging, and fencing of said railroad, furnishing all the materials required ; and the same was to be paid for upon monthly estimates of said chief-engineer.

It further appeared that the Plaintiffs had, on a lot adjoining the Defendant's road, 2,146 ties over and above the number required to fill and complete said contract. It appeared that the same were taken by the superintendent of the Defendant on or about the 8th of August, 1854.

The Plaintiffs proved a demand of the ties, at the office of the Defendant, of Mr. Vail, one of the directors of the Defendant's company, and a refusal, and the value of the ties on the day the same were taken, and the interest thereon, and rested.

The Defendant then moved for a nonsuit, on the following grounds :

1. That Plaintiffs had shown no title to the 2,146 ties in question.

2. That there is no evidence that the ties taken were not a part of the 17,000 sold to Decker & Co. by Plaintiffs' firm, under their contract.

3. That the evidence is wholly insufficient to entitle the Plaintiffs to recover.

The Court denied the motion, to which ruling and decision the Defendant then and there duly excepted.

Further testimony was then taken, and the motion for a nonsuit was subsequently renewed upon these grounds :

1. That the Plaintiff has shown no title in himself, at the time of the commencement of the action, to the 2,146 ties claimed.

2. That the Defendant has shown title in Decker & Co.

3. That the Defendant has shown title in itself.

4. That it appears that the 2,146 ties claimed were part of the 17,000 delivered by the Plaintiffs under their contract with Decker.

5. That these ties were paid for by Defendant to Flood, one of the owners, and were taken under a license from him.

6. That the Plaintiffs had shown no sufficient demand of the ties in question, and cannot recover without such demand.

The Court overruled the motion, and refused the nonsuit, to which ruling and decision the Defendant then and there duly excepted.

Further testimony was then adduced on both sides, and the jury found a verdict for the Plaintiffs for $1,210.35, and judgment thereon was affirmed at the General Term.

No question is presented for consideration of this Court, except upon the refusal to nonsuit the Plaintiffs. No other exception was taken upon the trial.

The first five grounds of that motion presented only questions of fact; and upon which there was conflicting evidence, and the Court properly refused to withdraw their consideration from the jury. Their verdict has established all these questions in favor of the Plaintiffs, and the simple question is presented, whether a sufficient demand was made for the ties in question before suit brought. Mr. Vail, the director of whom the demand was made at the office of the company, was acting as the recognized agent of the company in this matter. The superintendent of the Defendant, who took the ties, testified it was done by the direction of Mr. Vail, a director of the company. The demand upon him was, therefore, sufficient to authorize the Plaintiffs to maintain this action. The Defendant insists that detinue will not lie, as there is no proof that the ties were in the actual possession of the Defendant at the time of the demand, or at the commencement of the action, and it is claimed that the proof shows that the Defendant had parted with the possession of at least a portion of the property to the New York Central Railroad Company. This

Court have held the contrary of this. In Nichols *v.* Michael (23 N. Y. 264) we said, that "where a person is in possession of goods belonging to another, which he is bound to deliver upon demand, if he, without authority from the owner, parts with that possession to one who refuses to deliver them, he is responsible in detinue equally with the party refusing. He contributes to the detention. It is the consequence of his own wrongful delivery." The motion for a nonsuit was, therefore, properly refused.

The judgment should be affirmed, with costs.

PARKER, J.—This action is brought to recover possession of 2,146 railroad ties, which, it is alleged, the Defendant wrongfully detains from the Plaintiffs.

The question in the case arises upon an exception to the decision of the Court, upon the trial, denying a motion for a nonsuit; so that the inquiry here is, whether there is any evidence in the case upon which the jury was authorized to find a verdict for the Plaintiffs.

The Plaintiffs were under a contract with Decker & Worthly .(who were contractors to build Defendant's railroad, and supply the materials therefor) to sell and deliver them 17,000 ties, such as should bear inspection of the chief-engineer of the road. They did haul and deposit on a lot, called the Warren lot, near a brewery, and adjacent to the railroad, more than the requisite number; and on the 17th of October, 1853, they had on said lot (after having delivered 10,650) 9,882 ties, out of which, according to a computation and agreement on that day made between the Plaintiffs, Decker & Worthly, and the secretary of the company, it required 7,369 to make up the full number of 17,000. Of this required number, 3,800 were for the estimate for September, 1853, and the balance for rejected ties, and deficiencies in the estimates of previous months. There were, therefore, upon the lot 2,513 over and above enough to fulfil the contract between the Plaintiffs and Decker & Worthly, provided they would pass inspection. On the day above mentioned, the secretary of the company, with the consent of Decker & Worthly,

paid the Plaintiffs the amount to which the 3,800 would come, less ten per cent., for which he agreed to be accountable, and the Plaintiffs authorized the company to take the 7,369, which, it appears, included all that would be required to complete the road.

Between that day and the 22d of February, 1854, when the road was opened, the company proceeded to take ties, from time to time, from the Warren lot. On the 8th of August, 1854, they took 2,146 ties from that lot, some 1,700 of which were sold to the Central Railroad Company, and the residue piled near the depot and used for repairs. These, the Plaintiffs allege, were over and above the 7,369 which Defendant was authorized to take, and whether or not they were so is the question of fact in the case.

There is no direct or positive evidence that the Defendant took more than the 7,369 to which it was entitled; but it appears that, after the taking of the 2,146 in question, only a few hundred were left scattered about on the lot; so that the surplus 2,513 were mostly taken by some person or persons. It appears that no person had authority from Plaintiffs to take any from the lot, except the Defendant, nor was it shown that any other person did take any; but it appeared that Defendant was engaged from October 17, 1853, to February 22, 1854, in taking ties from the lot, for the road, from time to time, though how many it so took does not appear.

It appeared from the estimate, introduced in evidence by the Defendant, that the whole number required for the road was 16,882.

It is argued by the Plaintiffs' counsel that the jury had the right to conclude that the Defendant had used up the 7,369, which would make up the 17,000, by the 22d of February, 1854; and, therefore, that the 2,146 taken in August must have been a portion of the 2,513 surplus, which it had no right to take, especially as but about the difference between these two numbers was left on the lot, after the 2,146 were taken; and that this conclusion is strengthened by the fact that the 2,146 were not needed nor used for the construction of the road, and could not

be included in the 7,369 which, according to the estimate, were all, or nearly all needed.

It is impossible to say, in the absence of all evidence as to the number taken by the company between October, 1853, and February, 1854, there was no foundation for such conclusion. It was, therefore, a case for the jury, and the nonsuit was properly denied.

But the Defendant insists that the evidence shows that the ties in question were piled, when taken by Defendant, as complained of, within the bounds of the road, and therefore were in Defendant's actual possession, from which the presumption arises that the title was in the Defendant, and that the Plaintiffs did not overcome this inference by evidence.

It is by no means clear that the ties were piled within the bounds of the railroad, but if they were, at the time when taken up and carried to or near the depot, it is shown that they had, by some person unknown to the Plaintiffs, and without their authority, been removed from a place farther back on the lot to a place near the track; which fact, at least, tends to rebut the presumption of title arising from their being in Defendant's possession, by being piled within the bounds of the road. Moreover, the whole case proceeds upon the assumption, on both sides, that the ties in question are a portion of those furnished by Plaintiffs to Decker & Worthly, and that, unless they are a part of the 7,369 which Plaintiffs gave the Defendant liberty to take, they are Plaintiffs'.

It is said again by the Appellant's counsel, that there is no evidence that the ties were in the possession of Defendant at the commencement of this action.

It is shown that the Defendant took them on the 8th of August, 1854, and it appears from the record that the suit was commenced on the 9th of August, 1854. Now, though it appears that the larger portion of them was sold to the Central Railroad Company, it is not shown when, and it will not be presumed that they were not in possession. Without considering what would have been the effect of such want of possession, if it had been shown, it is a

sufficient answer to the objection now made that it was not shown upon the trial. Also, that no such objection was taken at the trial.

The record does not present any such error as calls for a reversal of the judgment. It must therefore be affirmed.

All affirm.