(20 Misc. Rep. 477.)

### KOBBE et al. v. VILLAGE OF NEW BRIGHTON.

(Supreme Court, Special Term, Kings County.    June 15, 1897.)

1. EMINENT DOMAIN—INJURIES REQUIRING COMPENSATION—NUISANCE.
   The operation of a cremator from which stenches escape, whereby the enjoyment of residential property in the vicinity is affected, is an injury to such property, and therefore it cannot be authorized by statute without compensation to the owners of the property affected.

2. SAME—LEGISLATIVE AUTHORITY.
   Individuals whose property is injured by a nuisance are not remediless because the nuisance was authorized by the legislature for public purposes.

3. NUISANCE—ACTS AUTHORIZED BY STATUTE.
   The rule that what the law authorizes cannot be a nuisance applies only to a public prosecution to abate it, and has no reference to the property rights of individuals.

Action by Philip F. Kobbe and others against the village of New Brighton. Judgment for plaintiffs.

Suit for an injunction to restrain the continuance of a nuisance, viz. the use of a cremator erected and used by the defendant, an incorporated village, within the village, for the burning of the garbage, night soil, dead animal bodies, and offal collected in the village. The plaintiffs owned and lived in residences situated about 1,000 feet from the cremator.

James B. Davenport, for plaintiffs.
Sidney F. Rawson, for defendant.

GAYNOR, J.   I find that stenches habitually emanate from the cremator; that they cause great discomfort to the public, and particularly to the plaintiffs in their residences; that the real property of the plaintiffs is specially damaged thereby, and that such damage is substantial.   It is contended for the defendant, that as it is authorized by statute to maintain a cremator within the village limits for a public use, viz., for the destruction of garbage, night soil, dead bodies and offal (chapter 376, Laws 1893), individuals damaged by its use are without redress.   It is said to be the law of this state that individuals are remediless for injury done to their property by a nuisance authorized by the legislature. I do not think this is so, whether the authorized use be a public or a private one.   It is often correctly said that that which the law authorizes cannot be a nuisance; but this has reference only to indictment, or a public prosecution to abate it.   Bohan v. Gas-Light Co., 122 N. Y. 18, 25 N. E. 246.   It has not, and cannot have reference to the property rights of individuals. The constitutional prohibitions against depriving any person of his property without due process of law, or without just compensation, may be violated without the physical taking of property.   They extend to every act which injuriously affects property rights.   In re Jacobs, 98 N. Y. 98; People v. Marx, 99 N. Y. 377, 2 N. E. 29; Forster v. Scott, 136 N. Y. 577, 32 N. E. 976.   Hence, the legislature is without power to authorize anything which damages private property, without requiring compensation to be made therefor.   Whatever misunderstanding there may be on this head in this country comes, it seems to me, from the citation of English cases.   In England, parliament is not subject to the constitutional restraints in respect of property rights which legislative bodies in this country are under. It is omnipotent.   It may take the property of the individual without compensation.   But while parliament has the power to do this, the courts of England refuse to construe an act of parliament as doing or meaning so unjust a thing, unless the act be so specific and precise that it cannot be otherwise construed. They will not attribute such an intention to parliament unless it be explicitly stated in so many words and in detail.   The London pesthouse case (Managers, etc., v. Hill, 6 App. Cas. 193) is an illustration.   There, inasmuch as the act of parliament was merely permissive that a hospital for contagious diseases might be built in the district, and did not specifically designate the precise piece of land upon which it should be built, or provide for compensation to the owners of property to be injured by the locating of the hospital, or say they should receive none, it

was held that the intention of the legislature was that no hospital should be built to the injury of private property except on consent of the owner, rather than that it should be built and used without compensation for such injury. This English doctrine could be applied to this case, and would control it; for here, also, the statute does not precisely locate the cremator, or provide for compensation for injury to contiguous property, or that none shall be paid therefor. But it would be incongruous to apply it, for our constitutional restraints upon legislative, as well as executive and judicial power, exclude it. It has no application. That which the English courts will not, as we have seen, attribute to the intention of parliament, unless the statute be so explicit that they have to, our courts cannot attribute to our legislature at all, however plain the statute, because it has not the power to do it. Parliament has the power to physically take the property of an individual without compensation; or to designate a lot of land for a pesthouse, and to provide that no compensation for injury to adjoining property by such pesthouse shall be made; but there is no such legislative power in this country. It is not therefore to be understood by the statement in judicial opinions in this country of the above-mentioned rule of statutory construction of the English courts (Cogswell v. Railroad Co., 103 N. Y. 10, 8 N. E. 537; Hill v. City of New York, 139 N. Y. 495, 34 N. E. 1090; Morton v. City of New York, 140 N. Y. 211, 35 N. E. 490), that it is applicable here, or can have a place in our system of government and law.

Cases like Radcliff v. Mayor, etc., 4 N. Y. 195, and Bellinger v. Railroad Co., 23 N. Y. 42, have to be interpreted in the light of later constitutional interpretation and development by the courts. The far-reaching effect of our constitutional guaranties for the protection of private rights or property, was not at first fully perceived, especially in respect of the office of such guaranties as checks upon legislative power; for before their adoption into our organic instruments of government in this country, they had never been checks upon legislative power, and are not such to this day in England. The Bellinger Case, it seems to me, is sometimes cited for that which it does not hold. The act there required compensation to be made by the railroad company, and the plaintiff had obtained in the eminent domain proceeding not only damages for the part of his land physically taken, but also the consequential damages to the rest of his land which would ensue from the construction of the railroad. The action was for damages alleged to have been caused to the plaintiff's land by overflow of the waters of the creek by reason of the negligent and wrongful construction of the roadbed and bridges. The trial court excluded evidence to show that the embankment and bridges were carefully and skillfully built with reference to the flow of the creek in relation to neighboring lands. This seemed to leave the jury free to assess damages caused by the embankment and bridges even though they were carefully and properly built; whereas the landowner had been paid the consequential damages which would ensue from the careful and proper building of the road, when his land was taken; and for this the judgment was reversed. This case is there-

fore no authority for the contention that an individual can have no redress for direct injury to his property caused by a use of land by or for the public, authorized by statute. The damage sued for in the Radcliff Case was not the direct effect of the laying out and making of the street. While the actual decision is controlling, I suppose that some things there said are not deemed consistent with later constitutional development. I do not see that anything was actually decided in that case, except that the law of natural support did not apply in respect of lands taken for a public highway. If, therefore, it be true that such a cremator as this statute authorizes is, like a pesthouse, necessarily offensive, and a direct injury to neighboring real property, though conducted in the most careful and scientific manner, the authorization of it by the legislature without providing for compensation for such injury, could not legalize it as against individuals thus damaged in their property. I do not find that such a cremator is necessarily a nuisance, and injurious to neighboring real property, but only that this one as conducted is. The intention of the legislature in authorizing this defendant to build and use a cremator, was that it should build one which should directly damage no one in his property. Whether, therefore, this cremator be inherently a nuisance, or is being made such by official incompetence and neglect, let the defendant, its officials, agents and servants, be enjoined from causing or permitting any more stenches to come from it, whether from its chimney, smokestack, vent, or otherwise.