(34 Misc. Rep. 55.)

### MILLIGAN v. BROOKLYN WAREHOUSE & STORAGE CO.

(Supreme Court, Trial Term, Kings County. February, 1901.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—DENIAL—STATUTE—VALIDITY —WAREHOUSEMEN—REPLEVIN.
    In replevin against a warehouse company by the owner of a piano wrongfully taken from her by the person storing it, defendant was not entitled to direction of a verdict under Laws 1895, c. 633, § 2, prohibiting any one from suing a warehouseman to recover possession of property on storage with him unless the warehouseman claims some right, title, or interest in it other than a lien for lawful storage charges, since such section is unconstitutional, as depriving the owner of his property without due process of law.

2. SAME—DEMAND—INNOCENT BAILEE—NECESSITY—UNLAWFUL POSSESSION.
    Where a piano was wrongfully taken from the owner and stored with a warehouse company, an instruction, in replevin therefor by the owner, that, if the property was wrongfully taken from plaintiff, demand of defendant and refusal by it before commencement of the action were not necessary, was proper, since defendant's possession as an innocent bailee from the wrongful taker was unlawful.

3. SAME—CONVERSION—DENIAL OF OWNER'S RIGHTS—EFFECT.
    Where plaintiff's piano was wrongfully taken from her and stored by the taker with defendant, defendant's refusal to inform plaintiff whether it had the piano, and its statement to her that she must sue the taker for the property, were acts of conversion, because inconsistent with plaintiff's rights as owner, making its possession unlawful, and therefore demand and refusal were unnecessary to maintain replevin.

4. SAME—PLEADING—GENERAL DENIAL.
    The burden being on defendant to show that it got the piano innocently, it was necessary to plead it as a defense in order to prove it, since under the general denial the only issue raised was whether defendant's possession was lawful, and, not having done so, the question was not in issue.

Replevin by Silvia C. Milligan against the Brooklyn Warehouse & Storage Company. Motion by defendant for direction of a verdict reserved until after verdict, and for a new trial on the minutes denied.

Action in replevin for a piano owned by the plaintiff. Motion by the defendant to direct a verdict in its favor, reserved until after verdict; and also for a new trial on the minutes. The piano was wrongfully taken from the plaintiff's residence during her absence and without her knowledge. She searched for it and found it stored with the defendant, a warehouse keeper, in the name of a person who had been a member of the plaintiff's household, but removed therefrom without the plaintiff's knowledge the same day the piano was taken. The evidence showed that such person wrongfully took the piano away with her.

Thomas Abbott McKennell, for plaintiff.
William N. Dykman, for defendant.

GAYNOR, J.  (1) The motion for a verdict for the defendant was based on act chapter 633 of the Laws of 1895.  That is a slovenly, disconnected, illiterate statute, the work of some "'prentice hand."  Its like is common in this state.  It consists of two sections.  The first is in substance that when a warehouseman is given notice (it does not say by whom or how) that "an action or proceeding" has been or is about to be commenced in which "there shall be brought into question the title to or right of possession of any goods" on storage with him, he shall hold the same until and subject to the order or judgment of the court therein.  The second section is a prohibition against any one suing a warehouseman to recover possession of property on storage with him, unless he claims some right, title or interest in it other than a lien for lawful storage charges.  Unless that be the case the statute deprives a claimant of all remedy except to sue some one other than the warehouseman to recover his property, even though it was stolen or wrongfully taken from him and the warehouseman has unlawful possession of it.  It prevents the claimant from ever getting his property unless he can ascertain who the person is who wrongfully took or stole it, or who stored it, and then find him and sue him.  And if that be found possible, the warehouseman may be insolvent and irresponsible and get away with the property meanwhile, though the statute requires him to hold it if notified.

I am not able to avoid holding that the second section of this statute is violative of our constitutional provision against depriving one of his property without due process of law.  It is a denial of due process of law to the individual for the maintenance and protection of his rights of property; and such constitutional provision extends not merely to the physical taking of property, but to every act which injuriously affects the security of property or property rights.  Kobbe v. Village of New Brighton, 20 Misc. Rep. 477, 45 N. Y. Supp. 777; Levy v. Dunn, 160 N. Y. 504, 55 N. E. 288.

(2) The jury were charged that if they found that the chattel was wrongfully taken from the possession of the plaintiff, a demand of the defendant and refusal by it before the commencement of the action was not necessary; and this was excepted to by the defendant.

It is elementary, and known to all in our profession, that a demand and refusal never need be proved to make out a case in an action of conversion or replevin, except where the possession of the defendant was lawful and continued to be such at the commencement of the action.  A lawful possession in the defendant continues such until it is turned into an unlawful detention by a demand and refusal; unless the defendant himself ends the lawful possession by some act of his which is inconsistent with the plaintiff's ownership and right of possession, i. e., which amounts to an unlawful conversion.  Until this occurs the possession is presumed to continue to be for the true owner.  The theory (for example) of the old action of trover was (as the name implies) that the defendant was a finder, which would make his possession lawful, and the object of proof of a demand and refusal was to put him in the wrong.

But the possession here was not lawful but unlawful (or tortious,

to use the convertible word). As the defendant did not own the chattel it could not have lawful possession of it except under or through the plaintiff, mediately or immediately, or as finder. Instead, its possession was from and for one who had wrongfully taken it from the plaintiff's possession; and it is a thing well known among us that a wrongful taker of a chattel cannot confer lawful possession of it on another. Bac Abr. tit. "Trover," C.; Williams v. Merle, 11 Wend. 80; Hoffman v. Carow, 20 Wend. 21; Id., 22 Wend. 285. On principle, therefore, no demand was necessary, for the only purpose of proving demand and refusal is to show that a lawful possession has been thereby turned into an unlawful one.

But as was reluctantly said by that fine common-law lawyer, Judge Cowen, in Barrett v. Warren, 3 Hill, 348, "an exception in favor of  *  *  *  a bona fide purchaser from the wrongdoer has found its way into the books," and "however discordant it be with established principles, it may, at least in this state, have become too inveterate to be displaced." If such a general exception does now really exist (which may well be questioned, it seems to me), the extent of it and its practical application need to be accurately understood. Concededly the possession of such a purchaser is unlawful, or tortious, and therefore no demand and refusal is necessary to make it such. How a mistaken idea to the contrary in this state crept in is traceable. It grew out of the rule in England that a bona fide purchaser in market overt got title to chattels wrongfully taken or even stolen. The meagre reference in 1 Selw. N. P. 581, to a case in the Year Book, where it is said that detinue will not lie "if the defendant took the goods tortiously, for by the trespass the property of the plaintiff is divested," was either such a case, or confounded therewith, as other cases undoubtedly were where like words were used, though the reporters do not reveal it. Hoffman v. Carow, 22 Wend. 286. The application of such rule here and there to cases not of market overt was of course inadvertent, and seems to have arisen from the careless reporting of market overt cases without stating them to be such, and thus making a rule orally stated from the bench for the particular case seem afterwards to be a general one. This growing lack of discrimination was responsible for the remarks of Judge Spencer to the same effect in Van Brunt v. Schenck, 11 Johns. 384, and also, it may be, for the early decision in this state in Storm v. Livingston, 6 Johns. 44, that lawful possession is got by a purchaser, at an execution sale of a chattel wrongfully levied upon, and that therefore conversion or replevin for it against such purchaser by the true owner does not lie until after demand and refusal. But this latter is a surmise, for possession got through legal process, and from an officer of the law, might well be deemed qualifiedly lawful. This decision comes down to us as the recognized law of the state. Barrett v. Warren (in which Judge Cowen made the remark quoted) was the same kind of a case, except that the replevin there laid was for an unlawful "taking and detention" (i. e., in the cepit), for which reason the action failed although there was a demand and refusal, on the technical ground that the defendant as purchaser at the execution sale

was not guilty of an unlawful taking, but only of an unlawful detention, and that therefore the action should have been laid in the detinet. Such remark of Judge Cowen was therefore obiter; but it seems that the rule is sometimes even now thought to be applicable to all bona fide purchasers from wrongful takers, and not merely to such purchasers at execution sales, for it has quite recently been said by Judge Earl in Gillet v. Roberts, 57 N. Y. 28, citing Barrett v. Warren and two other cases, that "it is well settled that a bona fide purchaser of personal property at a sheriff's sale, or even from a wrongdoer, is not liable for a conversion without a demand and refusal." But the case in which Judge Earl wrote this was also the case of an execution sale, so that what he said of bona fide purchasers from wrongdoers generally was also obiter; and the cases he cites do not sustain his proposition, except as to execution sales. The old inadvertent dictum of the title or property being changed by the trespass never made headway with us and was altogether repudiated in Cummings v. Vorce, 3 Hill, 282; but as a remnant of it this false notion that the possession of a bona fide purchaser from the trespasser was in some sort lawful, so that it required demand and refusal to make it unlawful, still lingers with us vaguely. In this state where we never had markets overt and the law of caveat emptor has always applied generally to sales of chattels, the mistake of supposing the trespass could change the title even qualifiedly never could have arisen, but it was copied into opinions here and there for a time.

I entertain no doubt that the law of this state is, notwithstanding some dicta to the contrary, that if one's chattel be stolen or wrongfully taken, he can follow it and maintain replevin for it against the person in whose possession he finds it, whether he be a bona fide purchaser or not, without a previous demand and refusal. Such possession is unlawful, and therefore no demand is necessary to make it such. And that the true owner is required by law to assume that such unlawful possessor is a bona fide purchaser, or inquire into that matter at all, has support in no legal principle whatever.

If, however, the rule requiring a demand and refusal in the case of a bona fide purchaser from the wrongful taker be deemed to exist, it does not seem that it could apply to an innocent bailee of such a taker. Judge Earl is careful not to say it does in Gillet v. Roberts, but Judge Bronson says in Pierce v. Van Dyke, 6 Hill, 613, that "In Barrett v. Warren, 3 Hill, 348, we held that a demand was necessary before an action could be maintained against one who purchased the goods bona fide, or received them as bailee, without any fault on his part, from a wrongdoer"; but on reference to Barrett v. Warren, you will find, as already stated, that that was not the case of a bailee. I own not to be able to perceive how on principle the rule if it exists as to a bona fide purchaser can apply to a bailee. If in the case of an innocent purchaser there be some sort of ground to indulge the lenient presumption that he is like a finder holding the chattel for the true owner when he arrives, and that he will give it up on demand, it does not exist in the case of a

bailee. Such presumption seems rebutted in the case of a bailee, for he is actually not holding the chattel for the true owner but for another.

But if the rule of demand and refusal be applicable to the case of an innocent bailee of a wrongful taker (assuming it to be applicable to a bona fide purchaser), then in the absence of a demand and refusal in the present case we have to fall back to the question whether the defendant converted the chattel by some act other than a refusal to deliver it up; for in that case a demand and refusal was not necessary, as any proof that will make out a conversion will sustain an action in replevin. We are no longer bothered with the distinctions in respect of the evidence necessary in the former actions of trespass, trover, conversion, detinue and replevin in the cepit or in the detinet. The actions of conversion and replevin as we now have them are substitutes for all of such former actions; and even though the bailee or possessor of the chattels has parted with them, replevin will now lie against him as detinue did formerly; unless his parting with them was not tortious, but against his will (i. e., in a case where his possession was lawful), for we have it of old that in such case he would not be liable in tort at all but only on the case (1 Rolle, Abr. 6; 4 Salk. 655); and that this has been the rule all along can be found in any text-book on Bailments. We no longer know such a thing or folly as turning a plaintiff in replevin around to an action for conversion. Nichols v. Michael, 23 N. Y. 264; Barnett v. Selling, 70 N. Y. 492; Dunham v. Railroad Co., 42 N. Y. 543. Indeed, the judgment prayed for and given in replevin is now in the alternative, i. e., for the property or for its value, whereas at common law the action of replevin was only possessory, and the chattel had to be taken by the sheriff on the writ in order to begin the action at all. Bac. Abr. "Replevin," A. To return therefore to whether there was a conversion by the defendant here, the law is that if a bona fide purchaser from the wrongdoer assume any dominion over the chattel inconsistent with the rights of the true owner, that is an unlawful conversion of it, even though done without notice or knowledge of the true ownership and in good faith. If, for instance, he should consume it, or sell it, believing himself the true owner, that would be an unlawful conversion of it, and would support an action for conversion or in replevin against him by the true owner. A demand and refusal would be unnecessary. La Place v. Aupoix, 1 Johns. Cas. 406; Everett v. Coffin, 6 Wend. 604; Hoffman v. Carow, 20 Wend. 21; Id., 22 Wend. 285; Cobb v. Dows, 9 Barb. 230; Spraights v. Hawley, 39 N. Y. 441; Pease v. Smith, 61 N. Y. 477; Riley v. Water-Power Co., 11 Cush. 11; Courtis v. Canes, 32 Vt. 232.

It is apparent from the foregoing decisions that if a demand and refusal be necessary in the case of a bona fide purchaser of goods stolen or wrongfully taken, in order to recover against him therefor in conversion or replevin, it can at all events only be while he still has possession. If then this defendant's position as innocent bailee of a thief or trespasser is to be deemed the same as that of a bona fide purchaser still in possession, nevertheless its act of re-

fusal to inform the plaintiff whether it had the chattel was an act of conversion. Such refusal was inconsistent with her rights as owner. She went to the defendant's warehouse searching for her chattel. She told the keeper it was hers and gave him the name of the bailor, and asked if he could tell if it was there. He answered that he could by looking at the books, but when requested by her to do so he refused. This was an act of conversion. He also took the position that the plaintiff must pursue the course prescribed by the void statute hereinbefore mentioned in order to get her chattel, and so informed her and turned her away. That was a denial of her right to have it delivered to her, or to get it in any other way than under such statute, and was another act of conversion. It was also a waiver of a demand if a demand had been necessary.

And if we consider the rule of demand and refusal applicable to a bona fide purchaser, and hence, as is claimed, to an innocent bailee also, we must understand its extent and its application. We must have in mind that there is no presumption that one claiming to be a bona fide purchaser from a thief or wrongful taker is such. That is for him to prove. It suffices for the plaintiff to prove that his chattel was stolen or wrongfully taken from him, and that he found it in the defendant's possession, and rest. If when an owner finds in whose possession his stolen property lies, he had to presume such person to be a bona fide purchaser of the thief, and not the thief or his receiver, and make a demand on him before suing him, it would often serve but to raise an alarm, and hurry both the wrongdoer and the property beyond reach. The law is never absurd, though it may sometimes be made to appear so for the time being. The presumption is not that the possessor is an innocent party; it is not even so in criminal law. On the contrary, if such rule of demand and refusal exist, the burden is on one sued in conversion or replevin to show that he got the chattel without knowledge of the wrong, and whether he did is a question for the jury. Barrett v. Warren, 3 Hill, 348; Pierce v. Van Dyke, 6 Hill, 613; Ely v. Ehle, 3 N. Y. 509. In the present case the defendant made no effort to sustain such burden; in fact gave no evidence on that head at all.

And the burden being on the defendant to show that it got the chattel innocently (if that could enter into the case at all), it was necessary for it to plead that as a "defence" in order to prove it. Let it be closely observed that the issue raised by the general denial could only be whether the defendant was in "lawful" possession, and not whether it was in "innocent" possession. The two terms are not convertible in legal terminology. Intent does not enter into whether an act is unlawful or tortious (Boyce v. Brockway, 31 N. Y. 493), though it does as to whether it is innocent or criminal. A general denial (as is too familiar for the citation of authority) only puts in issue what the plaintiff has to prove. The only issue raised by it in this case was whether the defendant had lawful possession as against the plaintiff. The defendant lost on that issue. It did not have lawful possession. The plaintiff being the true

owner, and the chattel having been wrongfully taken from her, the defendant's possession was concededly unlawful from the beginning.. That made out the plaintiff's case. She did not need to prove a demand and refusal in order by that means to make the defendant's possession unlawful. That already appeared. No matter how innocent the defendant may have been of any moral wrong, that would not make its possession lawful, and give it the right to hold the chattel as against the plaintiff. The general denial put in issue whether the defendant had possession lawfully; but it did not and could not put in issue whether it had possession innocently. That (if it could be an issue at all) was "new matter constituting a defence" which the defendant had to plead. Code Civ. Proc. § 500. And it was a very technical defence, not going to the merits at all. If it exist at all, it is an archaic survival of an old inadvertence, as has already been pointed out. If found to be proved by the jury, it would defeat the action as prematurely brought, unless the plaintiff met it by proof either of a demand and refusal, or of some other act of the defendant amounting to an unlawful conversion, as has already been seen. In a word, if the defendant claimed that it was in possession lawfully, it could prove that under the general issue, i. e., under the general denial; but that it was in possession innocently was another thing; it was not within such issue at all.

And it is essential to bear in mind that demand and refusal is not a matter of pleading in conversion or replevin, but a matter of evidence, and does not need to be pleaded any more than any other evidence. It never was a matter of pleading, as we may see from Chitty's text and his forms for declarations (or complaints) down to the present. The statements that may be found here and there to the contrary were clearly inadvertent. Bernstein v. Warland, 33. Misc. Rep. 280, 67 N. Y. Supp. 444. That the plaintiff here pleaded demand and refusal is of no consequence, for it not being necessary for him to prove it before resting, the allegation was immaterial, and no issue can be joined on an immaterial allegation in a pleading. Linton v. Fireworks Co., 124 N. Y. 533, 27 N. E. 406; Railroad Co. v. Hinchcliffe (Sup.) 68 N. Y. Supp. 556.

It is not necessary to point out, unless out of abundant caution, that the case of Goodwin v. Wertheimer, 99 N. Y. 149, 1 N. E. 404, has no application here. There the plaintiff sold the goods, and though he was induced to do so by fraud, the sale gave a qualified title, i. e., a title good until he elected to rescind it and take back his goods; and therefore the general assignee of the purchaser for the benefit of creditors had such title to the goods and was in "lawful" possession of them; and that made a rescission of the sale and demand and refusal of such assignee necessary before replevin or conversion would lie against him. If the goods had passed to a purchaser for value, it would have been too late to rescind.

A similar caution may be in place in respect of other cases cited to me for the defendant, like Esmay v. Fanning, 9 Barb. 176, McEntee v. Steamboat Co., 45 N. Y. 34, and Ball v. Liney, 48 N. Y. 6. When it is observed that these were cases between the bailor and his bailee, where the possession was therefore lawful, the recognition.

in the opinions of the necessity of proof of a demand and refusal cannot mislead us here.

The case of Scofield v. Whitelegge, 49 N. Y. 259, is a case standing alone, and is inapplicable. It deals with the sufficiency of a complaint in claim and delivery under section 1721 of the Code of Civil Procedure, where not an "unlawful taking and detention" (formerly replevin in the cepit) but only an unlawful "detention" (formerly replevin in the detinet) is alleged. Here an unlawful taking and detention is complained of. The dictum in the opinion in that case concerning the alleged necessity of pleading a demand and refusal in a case of unlawful detention is spoken of in Bernstein v. Warland, 33 Misc. Rep. 280, 67 N. Y. Supp. 444. Never was a demand and refusal a matter of pleading in replevin or conversion, but only a matter of evidence, as has already been mentioned. The idea of dismissing a complaint in replevin, or sustaining a demurrer to it, for not containing an allegation of demand and refusal, when the case may be made out without proving a demand and refusal at all, but by proving, it may be, that the defendant sent word it would be useless to make a demand, or made a positive claim of ownership, or consumed or sold the chattels (which the plaintiff may not have known when he brought the action, but which would not defeat the action, as we have already seen, the judgment in replevin now being in the alternative with us, i. e., for the goods or the value), is out of joint indeed. It is obvious that the passing sentence to that effect in the opinion was only a dictum. The point on which the complaint was insufficient was that it did not allege any title or right of possession in the plaintiff. This was the stress of the case as will be seen on closer examination.

Since writing the foregoing the case of Sinnott v. Feiock, 165 N. Y. 444, 59 N. E. 265, has been decided. At first it seemed opposed to some things said above in respect of replevin lying where conversion will lie, but on close examination it is not. There the defendant purchased the chattels from the plaintiff, but the sale was induced by the defendant's fraud, which made his title subject to be rescinded by the plaintiff at his election; but before such rescission the chattels were levied on and sold under an execution against the defendant, and the purchaser at such sale of course got absolute title. The plaintiff could no longer rescind. Afterwards the plaintiff brought replevin, i. e., against the purchaser from him. The action of course could not lie, for the reason that the plaintiff had no title or right of possession to the chattels, whereas title or right of possession in the plaintiff is the first requisite of an action of replevin. I do not see that anything else was decided. If title had been in the plaintiff, and the defendant had been in wrongful possession, and lost it by execution, or in any other way, a very different question would have been presented.

The motions are denied with $10 costs.