(40 Misc. Rep. 78.)

### SADLIER et al. v. CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County. February, 1903.)

1. NUISANCE—RIGHT TO DAMAGES.
   The rule in England that no damages or redress can be obtained in the courts for a nuisance, or any structure or use of real property, which does direct injury to private property, provided Parliament has authorized the same and not provided for compensation for such injuries, does not and cannot exist in this country.

2. SAME.
   Such rule in England is founded on the unrestrained and unlimited power of Parliament to take or damage private property at will without compensation, whereas in this country our Legislatures are under constitutional restraints in respect of individual rights of property.

**3. SAME.**

> The restraints of Magna Charta in favor of individual rights are upon the crown only. They never were and are not upon Parliament.

**4. SAME—LIABILITY OF CITY.**

> The owner of a building in Brooklyn, situated near the entrance to the New York and Brooklyn Bridge, distant from it about 20 feet, is entitled to compensation from the city of New York, the owner of the bridge, for the dirty water and slush falling or blown from the bridge, and flooding his roof and striking the side of the building and its windows, as for a direct injury to private property, though the location and use of the bridge have been authorized by the Legislature, which made no provision for compensation for such injuries.

Suit by Annie M. Sadlier and others against the city of New York to restrain a nuisance caused by the slush and dirt washing from the New York and Brooklyn Bridge and falling upon plaintiffs' building, settling upon the roof, clogging the waste pipes, and overflowing the roof, and leaking through it. Judgment for plaintiffs.

Jesse W. Johnson and Albert E. Lamb, for plaintiffs.

R. P. Chittenden, for defendant.

GAYNOR, J. The learned counsel for the defendant meets the case with the contention that the things complained of are necessarily and unavoidably incident to the existence and use of the bridge; and that, therefore, as the Legislature located and authorized the construction and use of the bridge, just where it is and as it is, the plaintiffs are remediless; that the injury done to their property has to be deemed damnum absque injuria.

In brief, it is claimed that the law of this state is that individuals can have no redress in the courts for injury done to their property by a nuisance authorized by the Legislature, or by reason of the construction or use of any public work so authorized, unless the Legislature also provide that compensation be made for such injury. A considerable array of dicta from opinions in the courts of this state is presented for this proposition; but nevertheless there is no such rule in this state nor anywhere in this country, and, more than that, it is impossible that there should be, it seems to me, under our constitutional restraints on legislative power in respect of the property rights of individuals.

Whatever of misunderstanding there may be on this head in this country arose from the inadvertent citation of certain English decisions which can have no application whatever with us. It suffices to refer to the London Pesthouse Case (Managers of Metropolitan Asylum District v. Hill, 6 App. Cases, 193) as typical of the class of decisions referred to, for it is invariably cited in support of the dicta which have been mentioned. Although such dicta are found in abundance, no actual decision has ever been based in this state upon the English rule they mention, as will appear from a close reading of the cases from Cogswell v. N. Y., N. H. & H. R. R. Co., 103 N. Y. 10, 8 N. E. 537, 57 Am. Rep. 701, to Fries v. N. Y. & H. R. R. Co., 169 N. Y. 270, 62 N. E. 358.

The law in England undoubtedly is that if Parliament authorize the actual taking of private property, or the construction and use by an individual or corporation of anything which is necessarily a private

nuisance, or injures the property of individuals, and provides no compensation therefor, the courts can give no redress for the injury. The question in each case is whether that is the intention of Parliament, and if it be the courts are bound to abide by it. But while Parliament has the power to do this, the courts of England refuse to construe an act of Parliament as doing or meaning so unjust a thing unless the act be so specific and precise that it cannot be otherwise construed. Managers v. Hill, supra.

But this is so in England only because Parliament is under no limitation or restraint. All lawyers and other students of constitutional history know that Parliament is not subject to the constitutional restraints in respect of private rights which legislative bodies in this country are under. It is omnipotent, as the expression is. Bryce's Am. Com. vol. 1, p. 32; Lecky's Dem. & Lib. vol. 1, pp. 8, 53. The restraints upon government contained in Magna Charta were extorted from the crown, and were and are to this day in England upon the crown or executive branch of government only. They were never restraints upon legislative power until made such in this country by our fundamental instruments of government. Those who made them such may not have been aware at the time that they were doing so, only having in mind, it may be, the sense in which such restraints had been theretofore understood; at all events they were evidently unaware of their far-reaching effects as exemplified by modern constitutional development.

"The concessions of Magna Charta were wrung from the King as guaranties against the oppressions and usurpations of his prerogative. It did not enter into the minds of the barons to provide security against their own body, or in favor of the Commons, by limiting the power of Parliament; so that bills of attainder, ex post facto laws, laws declaring forfeiture of estates, and other arbitrary acts of legislation which occur so frequently in English history, were never regarded as inconsistent with the law of the land; * * * the omnipotence of Parliament over the common law was absolute, even against common right and reason. * * * In this country written constitutions were deemed essential to protect the rights and liberties of the individual against the encroachments of power delegated to their governments, and the provisions of Magna Charta were incorporated into bills of rights. They were limitations on all the powers of government, legislative as well as executive and judicial. * * * Applied in England only as guards against executive usurpation and tyranny, here they have become bulwarks also against arbitrary legislation." Hurtado v. California, 110 U. S. p. 531, 4 Sup. Ct. 111, 28 L. Ed. 232.

In this country, the more plain and explicit the Legislature might be in authorizing the taking of private property, or a "direct" injury thereto, by a nuisance per se, or any trespass, the more plain it would make manifest that it had exceeded its constitutional powers. Kobbe v. Village of New Brighton, 20 Misc. Rep. 477, 45 N. Y. Supp. 777. The full extent of legislative power to legalize and shield a nuisance is to exempt it from public prosecution. Bohan v. Port Jervis G. L. Co., 122 N. Y. 18, 25 N. E. 246, 9 L. R. A. 711.

Enough has been said to show the absolute incongruity of citing in this country as applicable to our system and to the limited power of our Legislatures the English rule which has been mentioned. And it is moreover wholly meaningless to disconnect it from the question

of "direct" injury, and cite it (as is sometimes done) in support of the proposition that for "consequential" injury done by such structures and uses authorized by the Legislature, no recovery or redress can be had. Nonliability for consequential injuries is the ordinary general rule of damages which is laid down and applied daily in the trial of causes. It is applicable generally, and not merely to the cases of structures and uses authorized by the Legislature. It is to be found in text-books on Damages and in many decisions. All injuries are either direct or consequential, and the general rule is that these latter are not actionable, but damnum absque injuria. Lansing v. Smith, 8 Cow. 146; Sedgw. on Damages, §§ 110, 122; Suth. on Damages, §§ 14, 15. Judge Cooley states the rule with careful accuracy as follows:

"It is a general rule that no one has a vested right to be protected against consequential injuries, arising from a proper use of rights by others. This rule is peculiarly applicable to injuries resulting from the exercise of public powers." Const. Lim. (6th Ed.) p. 473.

The English rule of immunity from liability for injuries authorized by Parliament is based on the power of Parliament to take or directly injure private property without compensation, and relates only to "direct" injuries authorized by Parliament, i. e., injuries for which damages could be recovered under the general rule of damages but for the act of Parliament. It is of course never cited in England in cases of consequential injuries, for in such cases there as here the general rule of nonliability for consequential injuries applies; it is only cited in cases of direct injuries. The general rule of damages prevents a recovery for consequential injuries in all cases, and it is entirely unnecessary to cite or plead any act of Parliament or Legislature to escape liability therefor. To cite the said special English rule in this country in a case of consequential injuries is of course the same barren misapplication of it that a citation of it in a like case in England would be; and to cite it in this country to shield a person from liability for direct injuries done by him to the property of another under authority of the Legislature, as may be done in England, would be wholly futile, for Legislatures in this country have not the power to authorize direct injury to private property and deprive the persons so injured of a right of action therefor, or the taking of private property without just compensation therefor.

Our constitutional provisions against depriving any person of his property (1) without due process of law and (2) just compensation may be violated without the physical taking of property. They extend to every act, whether legislative or executive, which directly affects individual property or rights of property injuriously. Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636; People v. Marx, 99 N. Y. 377, 2 N. E. 29, 52 Am. Rep. 34; Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543; Garvey v. Long Island R. Co., 159 N. Y. 323, 54 N. E. 57, 70 Am. St. Rep. 550; Huffmire v. City of Brooklyn, 162 N. Y. 584, 57 N. E. 176, 48 L. R. A. 421; Pumpelly v. Green Bay Company, 13 Wall. 166, 20 L. Ed. 557; Eaton v. Boston, C. & M. R. Co., 51 N. H. 504, 12 Am. Rep. 147. And an act of the Legislature depriving a person in advance, as is claimed to be the case here, or subsequently, of a right of action for a trespass or direct injury to

his property is void for being in violation of the guaranty of due process of law. Dyett v. Hyman, 129 N. Y. 351, 29 N. E. 261, 26 Am. St. Rep. 533; Levy v. Dunn, 160 N. Y. 504, 55 N. E. 288, 73 Am. St. Rep. 699.

In every case like the present, therefore, the question is whether the injuries complained of are direct, or only consequential, the latter kind not being a basis for a cause of action under the general rule of damages, while the former is, as we have seen.

And in considering the question it is necessary to keep in mind carefully (as has been done in the foregoing) that the phrases "direct injury," and "consequential injury," are not the same or of the same meaning as the phrases "direct damages," and "consequential damages." The latter phrases are of the terminology of damages and the measure of damages, while the former are not, but are of the terminology of injuries. To illustrate, a direct injury may, in addition to direct "damages," do indirect, or, as it is often more loosely phrased, consequential, "damages," and the latter are recoverable as well as the former unless they be not proximate but remote, to use two other words which belong to the terminology of damages. In the case of a direct injury, the measure of damages includes both direct and indirect (or consequential) damages; but in the case of a consequential injury, there are no recoverable damages at all. Consequential (i. e., indirect) damages can only result from a direct injury; while no actionable damages of any kind or degree result from a consequential injury. Enough has been said to show the confusion which arises from the use of the words injuries and damages interchangeably. The phrases "remote and consequential," and "remote or consequential," in respect of injuries, are sometimes used, but are obviously tautological and lacking in scientific accuracy. It is enough to say injuries are consequential, for then they are nonactionable. In a loose sense they are remote, but that word belongs to such damages from a direct injury as are too remote to be allowed in a recovery. Sedgw. on Damages, § 122; Cooley's Const. Lim. (6th Ed.) p. 473; Lansing v. Smith, 8 Cow. 146.

In the present case the injuries are direct, there being an actual physical invasion of the plaintiffs' property. In the too often cited case of Radcliff v. Mayor, 4 N. Y. 195, 53 Am. Dec. 357, there was no such invasion, and the injuries were plainly not direct, unless the court could hold that the rule of lateral support—which, as the opinion of the learned judge there writing shows, only hangs by a thread, at best, and is more fanciful than real, applying only to the ground in its natural state, and not to any artificial weight thereon—applied to the land in a highway, which never was the case. The injuries there were only an incidental consequence of the city doing what it had the right to do on its own land; and the opinion points out that a private owner may open and work a mine, though it tumble down his neighbor's house; pull down his own house or wall, though the adjoining house fall for lack of its support; dig on his own land, though his neighbor's house fall into the pit; and so on; the injuries in all such cases being not direct, but only consequential, i. e., an incidental consequence of his lawful act, and therefore damnum absque injuria.

How that case ever came to be cited in opinions as if authority for the proposition advanced by the defendant in the present case, i. e., for the proposition of nonliability for direct injuries, is one of the singular things of judicial literature.  It is not to be wondered at that such opinions have been referred to by the highest authority as having "gone to the uttermost limit of sound judicial construction, * * * and in some cases beyond it."  Pumpelly v. Green Bay Co., 13 Wall. p. 181, 20 L. Ed. 557.

And this Radcliff Case may be used to point out the distinction between direct and consequential injury.  The injury caused to abutting land by cutting down the grade of the land of the street, and thus making it necessary for the private owner to protect his land by a wall, or else level it to the street grade, was consequential, and therefore damnum absque injuria; whereas, if the city in grading the street had, for instance, diverted the natural flow of water, or accumulated the surface water, and cast it upon the abutting land, that would have been a direct injury for which the city would have been liable in damages, even though it was unavoidable.  And the present case serves for similar illustration; for while the casting of slush upon the plaintiffs' house is a direct trespass and injury, the great depreciation of the value of the land situated as the plaintiffs' is in the space between the line of the entrance to this bridge and the river, by the diversion to the bridge of the former travel to the ferries, is consequential.  The former damage is recoverable, because it results from a direct injury; the latter not, because it results from a consequential injury.

The two cases of Gibson v. United States, 166 U. S. 269, 17 Sup. Ct. 578, 41 L. Ed. 996, and Pumpelly v. Green Bay Co., 13 Wall. 166, 20 L. Ed. 557, also serve as clear illustration when contrasted.  In the former, certain improvements by the government out in the channel of the Ohio river for the benefit of navigation, which were done under legislative authority, caused the water in the river to recede to a considerable extent from the plaintiff's dock on the shore.  The injury was held to be consequential, and therefore not actionable.  In the Pumpelly Case, on the contrary, water was backed up and made to overflow the plaintiff's land by reason of a similar improvement done under legislative authority, and the injury was held to be a direct one and therefore actionable.  In the one case there was no trespass or direct injury, while in the other there was.

The legislative authority was not a shield in either case.  In the Gibson Case there were no direct injuries, but only consequential injuries, and therefore no damages to be shielded from by legislative authority, the every day general rule of damages allowing no damages in such cases; in the Pumpelly Case there were direct injuries, and it was held that legislative authority could not shield from liability for the damages caused thereby.  Legislative right to do a thing is no more of a shield than common-law right.  If you have the right to do a thing, you are still liable in damages for any direct affirmative trespass or injury you commit in or by doing it.  That such direct injury may be unavoidable does not alter the case at all; the question of negligence does not enter into it; liability for negligence is another thing altogether.  Hay v. Cohoes Co., 2 N. Y. 159, 51 Am. Dec. 279;

St. Peter v. Denison, 58 N. Y. 416, 17 Am. Rep. 258; Sullivan v. Dunham, 161 N. Y. 290, 55 N. E. 923, 47 L. R. A. 715, 76 Am. St. Rep. 274.

The recent case of Fries v. N. Y. & H. R. R. Co., 169 N. Y. 270, 62 N. E. 358, has been strongly urged upon me by the learned counsel for the defendant, but I cannot perceive that anything was actually decided there contrary to the foregoing. The language of the first of the prevailing opinions is large, and may seem to be that there is no liability for direct injuries, or to pay for easements diminished, and to that extent taken, for the reason that the defendant took its railroad out of the cut below the surface of the street, and put it upon the elevated structure in the street, which was complained of as diminishing the plaintiff's easements in the street of light and air, by authority and direction of the Legislature. But this could scarcely have been meant, for the same principle if sound would have applied if the legislative direction had been to take the road off the street and put it through the middle of the blocks, in which case, however, every one would perceive the contrary, i. e., the legislative intention to be that the defendant should resort to its right to exercise the eminent domain power to acquire the necessary property for the purpose, and also pay damages for all direct injuries it should do. The opinion as a whole is not open to the construction contended for by the learned counsel for the defendant. Moreover, the other prevailing opinion rests on the express assertion that the injuries complained of were "remote or consequential" (to quote the phrase used), and therefore not actionable; and the judgment of the court seems to be based on that theory. True, it has been held through a long line of cases, beginning with that of Story, 90 N. Y. 122, 43 Am. Rep. 146, that such an elevated structure in a street does directly injure and diminish the abutting owner's easements of light and air in the street, and that such injury is not consequential merely; but it must be that in the Fries Case the Court of Appeals meant to and did find the fact the other way.

Let findings be presented; the amount of past damages are fixed at $1,200; the amount of permanent damages, if an alternative judgment is insisted on, will be fixed then.

Judgment for the plaintiffs.

GAYNOR, J. Since the foregoing was filed the Court of Appeals has decided the case of Muhlker v. N. Y. & H. R. Co., 66 N. E. 558, which is one of a class with the Fries Case, supra. It does not seem that anything was actually decided there which requires a change of the decision made in this case, as is contended. It must, it seems to me, be understood that this later judgment of the Court of Appeals proceeds on the same ground as that in the Fries Case, viz., that the injuries were not direct but only consequential, and therefore damnum absque injuria, as is the general rule of law. A contrary opinion must be deduced, it is contended, from a clause of the prevailing opinion, viz.:

"But that it" (the Legislature) "possessed the power to improve the street, as it did, for the benefit of the public, in the manner it did, compelling abut-

ting owners to bear so much of the burden of the improvement as resulted from the partial destruction of their easements of air, light and access, we have no doubt."

As it has been uniformly held since the Story Case that such "partial destruction" of easements by an elevated railroad is a "taking" of property within the meaning of the Constitution, the words of the opinion quoted would mean, if not restricted in meaning to consequential injuries, that although a railroad corporation cannot take such easements, in whole or in part, except by eminent domain proceedings and upon making compensation therefor, the Legislature may pass an act the effect of which is, ipso jure, to take such easements without compensation, and at the same time make a gift of them to a railroad corporation. It seems to me, to borrow a phrase from Judge Bronson, that "no one can wink so hard as not to see" that this cannot be done in the face of the prohibitions in both the state and federal Constitutions against a state taking or depriving any one of property without compensation or due process of law. If it can, then all property which a railroad company needs to acquire by eminent domain proceedings may be acquired in this way instead. This seems to show that the able judge who wrote referred to "partial destruction" by consequential injuries, and not by direct injuries amounting to a taking or depriving within constitutional meaning. Moreover (and of course this has to be said with hesitation and subject to correction), our state Constitution does not seem to allow the taking of property for a railroad or other business corporation, or for a municipal or local, as distinguished from a state, improvement or use, unless the compensation therefor be ascertained by a jury or by commissioners appointed by a court of record. Article 1, § 7. The state is not pledged for payment in such cases by the mere fact of taking, but only in cases of the taking of property by the state for state improvements or uses (Sage v. City of Brooklyn, 89 N. Y. 189); and it is only in these latter cases that the compensation is not required by the section of the state Constitution which has been cited to be ascertained by a jury or by commissioners. Matter of Rogers Avenue, 29 Abb. N. C. 364, 22 N. Y. Supp. 27. Can the Legislature by any means or method avoid this process in the former cases? If so, no cases are necessarily restricted to juries or commissioners, although the Constitution has been understood to the contrary. It seems obvious that the said opinion refers to consequential injuries only, and not to injuries which in effect take or deprive individuals of property, or of the full or unimpaired use thereof, which is a taking or depriving of property.